(No. 38480.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JOSEPH H. MILANI, Appellant.

*Opinion filed January 19, 1968.*

Richard M. Calkins, of Chicago, appointed by the court, for appellant.

William G. Clark, Attorney General, of Springfield, and Kenneth Hubler, State's Attorney, of Marion, (Fred G. Leach, Assistant Attorney General, of counsel,) for the People.

Mr. Justice Underwood delivered the opinion of the court:

Defendant, Joseph H. Milani, was adjudged guilty of murder and sentenced to 150 years imprisonment following his guilty plea entered midway in a jury trial in the Williamson County circuit court. Our original affirmance (34 Ill.2d 524) of the *pro se* appeal was reversed by the United State Supreme Court (*Milani* v. *Illinois*, 386 U.S. 12, 17 L. Ed. 2d 702, 87 S. Ct. 874) citing *Douglas* v. *California*, 372 U.S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814. In view of the *Douglas* rule that an indigent is constitutionally entitled to the appointment of counsel in a nondiscretionary appeal, we no longer adhere to our former policy that counsel would not be appointed in appeals from judgments entered upon pleas of guilty and have accordingly appointed counsel to assist defendant in this review.

The defendant alleges here that he was forced to plead guilty during the trial because of the court's "error" in admitting a post-indictment confession made by him to James Walter Devens, a fellow inmate at the Ft. Leaven-

worth Penitentiary, whom defendant charges was an "agent" of the government. The specific questions presented are (1) whether the defendant's constitutional rights were violated under the doctrine of *Massiah* v. *United States,* 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199, (2) whether the State's failure to furnish a copy of the confession and the name of the witness to the accused before trial violated the statutory requirement (Ill. Rev. Stat. 1959, chap. 38, par. 729) that such information be supplied to criminal defendants in certain circumstances and (3) whether the State's inclusion of Devens's name on a supplemental list of its intended witnesses 17 days prior to trial was a trial tactic violative of due process.

The defendant was indicted on September 27, 1960, and was brought before the trial court on January 5, 1961, for arraignment at which time he was served with a copy of the indictment and the public defender was appointed to represent him. Attached to the indictment was a list of 38 witnesses, and defendant was then given an additional list of 36 witnesses to be called by the prosecution. At the request of the public defender the court continued the arraignment so that defendant's attorney could have an opportunity to interview the prosecution witnesses and to become acquainted with the facts of the case. The defendant was returned to the Federal penitentiary at Leavenworth, Kansas, where he remained until his formal arraignment on April 8. On March 27, 1961, the defendant's attorney was served with a third list of State witnesses containing 12 names. At the April 8 arraignment defendant pleaded not guilty and trial was set for May 8. On April 22, 1961, a final list of 3 prosecution witnesses was filed in court and served on defendant's counsel.

Included in this final list was the name of "J. W. Devens" who had become defendant's confidant at the Ft. Leavenworth Penitentiary because the defendant had requested that Devens assist him in "some legal matters".

Devens testified that between the 30th and 31st of January, 1961, and the middle of either February or April, the defendant made a series of incriminating statements to him concerning the murder. This testimony recounted the substance of a conversation that occurred at the end of January in which defendant divulged facts relating to the murder with sufficient specificity to amount to a detailed confession of the crime. Devens further testified that on February 2, he gave this information to the Federal Bureau of Investigation. It was revealed on cross-examination of this witness that from the time of his original contact with the Federal authorities, Devens would report back to them each time he and the defendant engaged in a conversation. The witness steadfastly maintained that he acted independently in gathering this information, that he was not instructed by the Federal Bureau of Investigation to elicit further incriminating information from the defendant, and that the Federal agents merely asked him to relate the contents of each conversation when he would contact them.

Briefly stated, the testimony establishes that all of the admissions made by the defendant to Devens occurred after Milani had been indicted, and that the Federal agents were not initially responsible for Devens gaining a confidential relationship with the defendant but were interested in learning what had transpired in each conversation. While the record contravenes defendant's assumption that Devens's testimony included statements made by Milani to Devens subsequent to the latter's initial contact with the Federal Bureau of Investigation, it is largely upon this assumption that defendant urges his major contention that the introduction of Devens's testimony, over objection of defense counsel, violated defendant's constitutional right to the presence of counsel during a post-indictment interrogation under the doctrine of *Massiah* v. *United States,* 377 U.S. 201.

Our consideration of *Massiah* and its progeny has led us to the conclusion that the defendant's constitutional

rights were not infringed in this instance. The *Massiah* case involved an incriminating post-indictment conversation between Massiah and a co-defendant who had agreed to co-operate with customs officials by permitting the installation in his car of a radio transmitter that would enable government agents to overhear the contents of the oral exchange without Massiah's knowledge. The Supreme Court held Massiah was denied the sixth amendment right to assistance of counsel by this procedure "when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." (*Massiah* v. *United States*, 377 U.S. 201, 206.) In the instant case there is no evidence of deliberate elicitation from the defendant by Devens of incriminating facts concerning the murder; rather Milani volunteered a confession of his criminal acts to his confidant who was at the time of the initial discussion in no way associated with the investigative authorities. It is appropriate in this regard to note that while the Federal agents were receptive to Devens's periodic reports, the record is devoid of any evidence that they exercised control over the informer or gave him instructions to guide his conduct. We do not believe that *Massiah* or any later case prohibits the use of volunteered incriminatory statements which are gathered because of the co-operativeness of an informer in whom a criminal has misplaced his confidence, for the *Massiah* court cautioned, "We do not question that in this case, as in many cases, it was entirely proper to continue an investigation of the suspected criminal activities of the defendant and his alleged confederates, even though the defendant had already been indicted." 377 U.S. at p. 207.

There is no uniformity in the case law as to the exact meaning of the *Massiah* opinion. Some Federal courts of appeal read *Massiah* to establish an exclusionary rule only for incriminating post-indictment statements by defendants

which are induced or deliberately elicited by police officers or their agents in the absence of counsel. (*United States* v. *Accardi* (2d cir.) 342 F.2d 697; *United States* v. *Gardner* (7th cir.) 347 F.2d 405; *Stowers* v. *United States* (9th cir.) 351 F.2d 301; *United States* v. *Garcia* (2d cir.) 377 F.2d 321.) None of these opinions, however, gives any consideration to the memorandum decision of the United States Supreme Court in *McLeod* v. *Ohio*, 381 U.S. 356, 14 L. Ed. 2d 682, 85 S. Ct. 1556, which reversed a decision of the Ohio Supreme Court (*State* v. *McLeod*, 1 Ohio St. 2d 60, 203 N.E.2d 349) that attempted to limit the scope of *Massiah* to statements which are deliberately elicited from an accused by an informer who has agreed to co-operate with the government. (203 N.E.2d at 351.) The United States Supreme Court's reversal of the Ohio court's narrow interpretation cites to the *Massiah* case as authority for excluding the spontaneous, voluntary, post-indictment oral confession which was made, before counsel was appointed, to government officials while the defendant was riding in their automobile looking for the gun used in the holdup. We would agree with the First Circuit Court of Appeals that the action of the Supreme Court in *McLeod* indicates that *Massiah* "applies to exclude post-indictment incriminating statements of an accused to government agents in the absence of counsel even when not deliberately elicited by interrogation or induced by misapprehension engendered by trickery or deception." (*Hancock* v. *White* (1st cir.) 378 F.2d 479, 482; see also *People* v. *Halstrom*, 34 Ill.2d 20.) The United States Supreme Court's recent reversal in *Beatty* v. *United States*, 389 U.S. 45, 19 L. Ed. 2d 48, 88 S. Ct. 234, reversing 377 F.2d 181 (5th cir.), confirms this interpretation.

The case before us, however, differs from those discussed above because the testimony of informer Devens related to a confession made by Milani before the witness had any connection with the Federal Bureau of Investigation,

and we do not believe that Devens's testimony recounting the contents of Milani's original confession became tainted because of the informer's subsequent relationship with the Federal agents. This case is decisively dissimilar from *Massiah* in that the informer here was *not* placed in geographic proximity with the indicted defendant by prosecution agents who sought to surreptitiously elicit self-incriminating admissions in the absence of defense counsel. On the contrary it was Milani who approached Devens for self-seeking purposes, and while the recapitulation of a damaging confession might amount to a betrayal of an ostensible friendship, we know of no rule of evidence which is thereby violated. The *Massiah* case "did not intend to hold that all those to whom indicted persons make admissions become *ipso facto* government agents and that nobody to whom defendants in criminal cases make incriminating statements can testify to those statements unless counsel was present when the statements were made." (*Paroutian* v. *United States* (2d cir.) 370 F.2d 631, 632.) We therefore hold that *Massiah* may not be invoked to make inadmissible a post-indictment confession indiscreetly made to a fellow inmate who is not at the time an agent of the prosecution. *Paroutian; People* v. *Teale,* 45 Cal. Rptr. 729, 739-40.

Defendant next argues that Devens's testimony was improperly allowed in evidence in violation of the governing statutory section (Ill. Rev. Stat. 1959, chap. 38, par. 729) which dealt with the admissibility of confessions at the time of the disposition of this cause. That section read in pertinent part: "Whenever a written or oral confession shall have been made before any law enforcement officer or agency in this State by any person charged with any crime, a copy of such confession, if written, together with a list of the names and addresses of all persons present at the time such confession was made shall be given to the defendant. * * * No confession shall be admitted as evidence in any case unless the confession and/or list of names and ad-

dresses of persons at the time the confession was made is furnished as required by this Section."

Stressing the language "No confession shall be admitted as evidence *in any case* * * *" (emphasis added) and our statement in *People* v. *O'Connell,* 30 Ill.2d 603, 608, that this statute was intended to protect against surprise and inadequate defense preparation, defendant urges that we reconsider our earlier interpretations (*People* v. *Clay,* 38 Ill.2d 17, 22; *People* v. *Martin,* 35 Ill.2d 289, 293) in which we indicated the scope of this statute was limited to confessions made to law enforcement officers or agencies. However, we cannot say that the legislative intention applied to *all* confessions when the language of the section specifically refers to confessions "made before any law enforcement officer or agency in this State * * *." We may assume that since the legislature so precisely limited the circumstances in which the defense was to be furnished with a copy of a confession and a list of witnesses, the drafters had considered the various environments in which a confession could be elicited and chose to require disclosure only of those most suspect confessions which were rendered while the accused was in police custody and subject to possible coercion. From the standpoint of statutory construction we are supported both by the maxim that the expression of one circumstance implies the exclusion of others (see *Nelson* v. *Union Wire Rope Corp.,* 31 Ill.2d 69), and by our policy that requires a strict construction of statutes in derogation of the common law (*Cedar Park Cemetery Ass'n* v. *Cooper,* 408 Ill. 79; *Walter* v. *Northern Ins. Co. of New York,* 370 Ill. 283) which did not provide an accused with discovery rights as to the State's case. (See Anno., 7 A.L.R. 3d 8, 22, and cases cited therein). We find no persuasive reason for departing from our prior decisions in *Martin* and *Clay.*

Finally, we come to Milani's contention that he was deprived of due process under the fourteenth amendment

of the United States constitution because the State deliberately withheld the name of "the most critical witness" "until the eve of the trial." The chronology of events in this case points out the weakness of this agrument since the defendant's attorney was served with a list of witnesses containing Devens's and two others' names 17 days before the commencement of the *voir dire* examination (May 8, 1961), and 24 days before the actual beginning of the trial (May 15, 1961). Moreover, it is not wholly clear that Milani was unaware that Devens would testify at the murder trial. Devens testified that Milani threatened to kill him if he revealed any of the incriminating information which the defendant had confided in him. It is impossible to determine from the record whether this threat was a generalized manifestation of Milani's apprehension and distrust of Devens or whether the threat was made because the defendant actually knew that Devens intended to be a witness for the prosecution. Regardless of the real motivation of this threat it is obvious that Milani knew that Devens could be a most damaging witness and this knowledge was at least constructively in the possession of the defense.

In determining whether defendant was denied a "fair trial" by the post-arraignment addition of a witness list containing three names we note that even unlisted witnesses are allowed to testify under Illinois procedure in the absence of a showing of surprise or prejudice neither of which appears here, *People* v. *Jordan,* 38 Ill.2d 83, 93; *People* v. *Hopkins,* 29 Ill.2d 260; *People* v. *Welch,* 22 Ill.2d 558.

Finding no reversible error in the proceedings we affirm the judgment of the circuit court of Williamson County.

*Judgment affirmed.*