**People of the State of Illinois, Plaintiff-Appellee, v. Gordon Johnson, Defendant-Appellant.**

Gen. No. 51,678.

First District, Third Division.

September 26, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Norman W. Fishman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Francis J. Carey, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The defendant, Gordon Johnson, was indicted for murder. He was tried by a jury, found guilty of volun-

tary manslaughter and was sentenced to a term of not less than five nor more than ten years in the penitentiary.

Johnson and the deceased, George Young, were friends. On the evening of April 3, 1965, Johnson, Young and James Lee, Jr., were at the apartment of Lee's sister. Also present was Catherine Johnson (no relation to the defendant). Johnson and Young, both of whom had been drinking heavily, began to quarrel. The quarrel grew loud and Young punched Johnson. Johnson grabbed a butcher knife from a table and Young backed away. Lee took Johnson into another room and urged him to make up with his friend. Johnson agreed to do so and a few minutes later he asked Young to step outside in the hallway to talk.

A few minutes after this, Lee and Catherine Johnson heard a "thumping" or "banging" noise. They looked out the window and saw Johnson kicking Young who was lying near the bottom of the concrete front steps. They ran outside. Young was on the walk and Johnson was kicking him in the head. Young's face was bleeding and he appeared to be unconscious. Lee tried to stop Johnson but each time he did Johnson threw him off, saying that he was going to kill Young. Johnson dragged Young a short distance and kicked him two more times in the head. Johnson then returned to the apartment and exchanged his trousers, which had been torn in the fight, for a pair furnished by Lee. The police were called. Young was taken to a hospital where he was pronounced dead.

At his trial, Johnson explained that he apologized to Young in the hallway but that Young responded by striking him twice, pushing him against a wall and knocking him down. They struggled and Johnson pushed Young out the door onto the front porch. There he struck Young in the stomach, making him crouch over, then

15

struck him again and knocked him off the porch. Young fell down the steps and hit his head on the sidewalk below. Johnson testified that the struggle continued when he came down the stairs and Young grabbed him about the legs and tried to pull him down. He said he may have kicked Young but claimed that any kick about the head was unintentional as he was merely kicking his legs to get free. After a while Young got up and they continued to fight. Johnson broke away and saw Young's head strike the rail of a fence. Johnson then placed him against the fence, figuring, he said, that Young would eventually get up and go home. At this time James Lee grabbed Johnson and urged him to return to the apartment, which he did.

A physician, who testified for the defendant, said that in his opinion Young's death and the injuries he received could have resulted from his falling down the stone steps and striking his head against a hard surface. He also said that the death and injuries could not have been produced by kicking. On the other hand, the coroner's pathologist, testifying for the State, said the death was caused by violence and could not have come from just a fall. He added that only a fall down three or four hundred steps could have produced Young's injuries. These he described as multiple head lacerations that extended to the bone; part of the scalp had been torn away from both the left and right sides of his head; his face had many bruises and contusions; his eyes were swollen and blackened and an examination of his scalp, skull and brain disclosed extensive hemorrhages.

The only issue to be determined in this appeal is the propriety of the following instruction which was refused by the court:

"The court instructs the jury that if you believe from the evidence in this case that the defendant

16

was engaged in a lawful act without any intention of killing anyone but unfortunately, killed the deceased, at the time and place charged in the indictment, the killing would be excusable homicide and your verdict should be not guilty."

Johnson argues that he was entitled to this instruction because it was the only one tendered which embodied his theory of the case—death by misadventure. He quotes this definition of misadventure: "Homicide 'by misadventure' occurs where a man, doing a lawful act, without any intention of hurt, unfortunately kills another." Black, Law Dictionary (4th ed 1951). He also quotes the following passage from People v. Lefler, 38 Ill2d 216, 230 NE2d 827 (1967):

"[T]he court refused an instruction to the effect that if the deceased met her death by misadventure without any conscious disregard by the defendant for her safety, the jury should find the defendant not guilty. . . . The defendant was entitled to an instruction on his theory of the case and the court should have given this instruction."

■■ In equating the above quotations with the refused instruction the defendant overlooks the words "without any intention of hurt" in the first quotation and the words "without conscious disregard . . . for her safety" in the second. These words differ greatly in degree from those in the instruction: "without any intention of killing anyone." The instruction stated that if Johnson's act was lawful and if he had no intention of killing Young he should be acquitted. This is not the law in Illinois. Young's death may have been unintended, under Johnson's version of what took place, but the blows which caused his death were not struck "without any intention of hurt" or "without conscious disregard" for his safety. And even if they were, the fact that a lawful

17

act unintentionally results in death does not excuse one of culpability if the act which caused the death was performed recklessly and was likely to cause death or great bodily harm.

■ Death resulting from a blow with a fist may be involuntary manslaughter. People v. Hunter, 365 Ill 618, 7 NE2d 444 (1937); People v. Lurie, 276 Ill 630, 115 NE 130 (1917); People v. Mighell, 254 Ill 53, 98 NE 236 (1912); Koser v. People, 224 Ill 201, 79 NE 615 (1906). In People v. Crenshaw, 298 Ill 412, 131 NE 576 (1921) the indictment charged that the defendant committed murder by striking the deceased with his fist. The reviewing court said:

> "The striking of a blow with a fist on the side of the face or head is not likely to be attended with dangerous or fatal consequences. . . . The act of the defendant in striking the deceased was unlawful, but it is clear from the evidence that it was not delivered with the intent of causing death. . . . The defendant is presumed to have intended the reasonable and probable consequences of his act, but death not being a reasonable or probable consequence of a blow with the bare fist, he is not presumed to have intended it to produce that result, and if he did not, the crime would be manslaughter and not murder."

■ If Young died as a result of striking his head on the steps or sidewalk, Johnson was responsible for the result unless he had lawful justification for striking the blows he did. Lawful justification would have been self-defense (Ill Rev Stats 1963, c 38, § 7–1) but he did not claim that he acted in self-defense. One who kills without lawful justification commits involuntary manslaughter if his acts, whether lawful or unlawful, are performed recklessly and are such as are likely to cause death or great bodily harm. Ill Rev Stats 1963, c 38,

18

§ 9–3. One acts recklessly when he consciously disregards a substantial risk that death or great bodily injury will follow his acts, and if his disregard for the risk constitutes a gross deviation from the standard of care which a reasonable person would exercise in a like situation. Ill Rev Stats 1963, c 38, § 4–6.

According to his own testimony, Johnson pushed Young onto the porch. He then struck him in the stomach causing him to double up; while he was in this position Johnson struck him a second time and with such force that he knocked him from the porch to the sidewalk. Young did not hit Johnson while they were on the porch. Johnson struck the last few blows; these blows were the proximate cause of Young's striking his head. Hitting Young with the force that propelled him from the porch was a reckless act which was likely to cause him great bodily harm.

■ ■ A defendant has the right to have the jury instructed on his theory of the case and on the law applicable to any state of facts which the jury might properly find to have been proved. People v. Laczny, 63 Ill App2d 324, 211 NE2d 438 (1965). This is so even if the facts upon which the defense is based are contrary to the defendant's own testimony. People v. Izzo, 14 Ill2d 203, 151 NE2d 329, cert den, 362 US 403. In the present case, however, neither the defendant's testimony nor any other testimony supports the tendered instruction. Even if the testimony of Johnson and the doctor who testified in his behalf is accepted, the homicide was not misadventure or accident—it was involuntary manslaughter. The court correctly refused the instruction.

The judgment is affirmed.

Affirmed.

SCHWARTZ and SULLIVAN, JJ., concur.