THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* OMER PRESTON BROWN, Defendant-Appellant.

(No. 71-17; )

Second District—February 13, 1973.

Ralph Ruebner, of Defender Project, of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, (James W. Jerz, of counsel,) for the People.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

Following a jury trial defendant was found not guilty of murder, but guilty of involuntary manslaughter, of Edgar Beach and was sentenced to a term of three to ten years in the penitentiary. He appeals charging (1) failure of his appointed counsel to move to suppress evidence amounted to incompetence of counsel, which deprived him of a fair trial, (2) defendant's guilt of involuntary manslaughter was not established beyond a reasonable doubt, and (3) the court erred in the giving of, and failure to give, certain instructions to the jury.

The principal witness for the State, William Hart, testified that after leaving work about 6 P.M. on March 20, 1970 he, the defendant, and Beach stopped at a liquor store and bought three bottles of wine, some cigarettes, and a pint of whiskey and drove to the residence where Beach and defendant lived. They sat down in the kitchen, smoked, talked, listened to the radio, and each drank a bottle of wine; the defendant and Beach also drank the pint of whiskey; they also had some bacon to eat. About 8:40 P.M. Hart and the defendant drove to a tavern, bought three more bottles of wine and returned to the house. About 9:30 P.M. a fight started between defendant and Beach. Defendant punched Beach twice and Beach fell to the floor, pulling defendant down with him. After struggling defendant got up and while Beach was holding onto his legs, defendant kicked Beach eight or ten times in the head and face and then pulled Beach up from the floor. The argument continued and the defendant told Beach to get out and pushed him out the back door. The defendant and Hart continued drinking, eating and talking. Then the defendant became angry and said, "He ain't had enough," went to the bedroom, came out with a hammer, and went out the front door. About four minutes later the defendant returned and went to the bedroom. Hart saw nothing in his hand. Defendant then came out of the bedroom and sat down at the table. They had more drinks in the next 15 or 20 minutes. Hart then left the house about 9:30 and proceeded to look outside for Beach. He found him lying at the side of the house, knelt down and shook him, and asked Beach to come with him. He couldn't feel any "bad wounds on him but he had a little blood". He

held Beach's wrist but felt no pulse. Hart then drove to Lenny's Tavern arriving there about 10:30 and told Lenny "I think Omer [defendant] wiped Ed [Beach] out with a hammer." Lenny agreed to call the police and told Hart to wait.

The police picked up Hart about 11 P.M. and then drove to defendant's house where the police officer who testified observed the body of Beach. He forced the front door open and arrested the defendant advising him of his rights. The police inspected the house and yard and found the hammer head about seven feet from Beach's body, but did not then find the hammer handle. The hammer head was rusted and no blood was found thereon. Another police officer testified that on March 21 he made a search of defendant's home and there found the hammer handle sticking out of a boot. It was stipulated that while the hammer head and handle had similar general physical characteristics, the hammer handle could have once been inserted in the hammer head. It was also stipulated that type A human blood was found on defendant's shoes and on the bedroom floor of his home. Beach's blood was type A.

. . Dr. Kenneth M. Truemner, a pathologist, testified as to the cause of death of the victim Beach. He performed an autopsy and found indications of recent trauma on the face and head, several bright red contusions on the cheeks and lips, and the soft tissues of the nose; there was swelling of the lips and their surface showed numerous bursting-type lacerations; decedent's nose had been broken. The injuries were all in the area of the head and face. Internal examinations disclosed an increase in the blood and other fluids in the lungs, and the blood did not clot properly. In his opinion Beach's death occurred from the interaction of three causes: (1) the rather severe beating about the head and face, (2) the extremely high alcohol level of .374 grams (400 grams can be associated with death from alcoholic intoxication), and (3) asphyxiation indicated by the fact that the blood did not coagulate. He testified that the beating about the head and face were a contributing cause of the death mechanism and were consistent with a blow by the sole or other part of a shoe. There were no solid clots blocking the nasal passages and the mud in the nose did not block air passage.

Defendant testified he bought a pint of whiskey and cigarettes at the liquor store before going to his house with Beach and Hart. After finishing the bottle of whiskey he went to his bedroom and laid down. Beach and Hart were arguing, and at one point they knocked everything off the kitchen table. When this happened defendant hit Beach with the back of his hand causing Beach's nose to bleed. Defendant denied striking him again or pushing him out the door or going out the door with a

hammer. He also denied going with Hart to a tavern for more wine. He testified that because of the arguing he went across the street to his mother's home and stayed for about 15 minutes. On his way back he saw "a black car sitting out there * * * the man got off the porch * * * got in the car and pulled away."

Defendant's mother testified that the defendant came about 10 P.M., stayed about 20 minutes, and that as defendant was crossing the street she observed a stranger get in a car and drive away. Defendant's brother testified that he called at defendant's house about 9 or 10 P.M. on March 20, that Hart let him in, and that when Hart and Beach were arguing, defendant told them to shut up or go fight outside and finally "smacked" Beach across the nose causing bleeding.

Defendant contends that his counsel should have moved to suppress certain evidence, *i.e.,* the hammer handle which was discovered in defendant's house by the police on the day following his arrest, and that his counsel's failure to do so amounted to incompetence depriving him of a fair trial. It is of course possible that his counsel's failure to move to suppress that evidence was due to defendant's having consented to the search of his house on the day following his arrest. We do not know. However, the record shows that the defendant testified that he signed a "dozen" documents after his arrest. One of these could have been a consent to the search.

■■ Examination of the entire record here discloses that defendant was effectively represented by his counsel throughout the trial. The quality of his representation may be reflected by the fact that defendant was acquitted of murder and convicted of involuntary manslaughter.

Even if the hammer handle should have been suppressed, the jury had properly before it the hammer head which was found a few feet from Beach's body. If it were error to receive the hammer handle in evidence, it was harmless error beyond a reasonable doubt. (*Chapman v. California,* 386 U.S. 18, 22, 24; *People v. Smith,* 38 Ill.2d 13, 15.) The jury had substantial overwhelming evidence to support its verdict without the hammer handle.

■■■ Defendant's contention that his guilt of involuntary manslaughter was not proved beyond a reasonable doubt rests on testimony of the pathologist on the cause of death. However, the pathologist's testimony which was uncontradicted was, in substance, that Beach's death was caused by the severe beating he received from the defendant in combination with the other factors, *i.e.,* high alcohol level and asphyxiation. In *People v. Meyers,* 392 Ill. 355, 359, the court said:

"The law is that when the State has shown the existence, through

the act of the accused, of a sufficient cause of death, the death is presumed to have resulted from such act, unless it appears death was caused by a supervening act disconnected from any act of the defendant."

Unless there is an independent intervening act between defendant's unlawful act and death, to which death may be attributed, the defendant's unlawful act is the cause of death. In *People v. Paulson*, 80 Ill.App.2d 44, 48-49, the court said:

"A supervening act will not relieve an accused from responsibility for the death of another unless that act was disconnected from the act of the accused. * * * The chain of events ultimately causing the death of Lee Jones was set in motion by the act of the defendant and therefore the resulting infection was not disconnected from defendant's act."

In the instant case the victim Beach would not have died but for the beating he received.

*Cunningham v. People*, 195 Ill. 550, 573, cited by the defendant, states the following rule:

"If the injuries which caused the death of Hartman proceeded from the fall upon the pavement, and his inability to stand erect arose *wholly* from one or more of his many physical infirmities or afflictions or from intoxication, and such inability to maintain an upright position was not contributed to * * * by the blow, his death should be attributed to natural causes." (Emphasis supplied.)

In the instant case the pathologist testified that death was due to the interaction of the beating with the other factors.

■■ Defendant complains that the trial court erred in giving People's Instruction No. 10A which reads:

"In order for you to find the acts of the defendant caused the death of Edgar Henry Beach, it is not necessary that you find the acts of the defendant were the sole and immediate cause of death."

At the conference on instructions the only statement directed thereto by defendant's counsel was, "I am going to object to it for the record, your Honor." He voiced no specific objections to the instruction. In *People v. Price*, 96 Ill.App.2d 86, 95, the court in referring to Supreme Court Rule 451 (Ill. Rev. Stat. 1969, ch. 110A, par. 451) said:

"This rule does not remove the necessity for making specific objections to instructions in the conference on instructions in the trial court. Rather it places squarely upon the shoulders of the defendant who seeks to avoid a waiver in the reviewing court the

obligation to establish (a) that the defects in the instruction are substantial and (b) that its giving resulted in denying to defendant justice and a fair trial."

In our opinion defendant has not met that burden. The instruction was obviously designed to inform the jury that they were required to consider and determine whether the death of Beach ensued because of the acts of the defendant, and that it was not necessary that his acts were the sole and immediate cause thereof. The instruction was proper. See *People v. Meyers, supra,* at 359; *People v. Reader,* 26 Ill.2d 210, 213.

Finally, defendant contends that in failing to include in the instructions the definition of "recklessness" the trial court committed reversible error, inasmuch as recklessness is an element of the offense of involuntary manslaughter. (Ill. Rev. Stat. 1969, ch. 38, sec. 9—3(a).) On the offense of involuntary manslaughter the jury was instructed as follows:

"PEOPLE'S INSTRUCTION NO. 9. A person commits the crime of involuntary manslaughter who causes the death of another by acts which are performed recklessly and are likely to cause death or great bodily harm to another.

PEOPLE'S INSTRUCTION NO. 10. To sustain the charge of involuntary manslaughter, the State must prove the following propositions:

That the defendant performed the acts which caused the death of Edgar Henry Beach; and

That the defendant performed those acts recklessly;

That those acts were likely to cause death or great bodily harm.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

Neither the defense nor the State tendered any instruction regarding "recklessness". The Committee Comments following I.P.I.-Criminal Nos. 7.07 and 7.08, which were the basis for People's Instructions 9 and 10, state that they are to be followed by the legal definition of "recklessness" in I.P.I.-Criminal No. 5.01. While defendant's failure to tender an instruction may have instituted a waiver, we will nevertheless consider this contention.

■■ In *People v. Bolden,* 103 Ill.App.2d 377, cited by defendant, the court reversed because the instruction neither mentioned nor defined

the term "recklessness". In the instant case the instructions included the term although they do not define it. *People v. Davis*, 74 Ill.App.2d 450, 453-454, cited by defendant, has been limited by the later case of *People v. Parks*, 133 Ill.App.2d 348, 273 N.E.2d 162, 165, which holds that instructions must be taken as a whole and failure to give full and complete instructions will not be the basis for reversal if the evidence of defendant's guilt is so clear that the jury could not possibly have found him not guilty. While the trial court did not define "recklessness", its failure did not work a substantial prejudice to the defendant. In *People v. Maldonado*, 3 Ill.App.3d 216, 224-225, the court said:

> "It is also argued that the jury was insufficiently instructed on the offense charged since the trial court failed to instruct the jury as to the meaning of the term 'reckless' on its own initiative. The Criminal Code defines the term in generalities to the end that the definition may be applied to an infinite variety of acts. While it would seem desirable to instruct the jury in the language of the Code wherever possible, we are convinced that the failure of the court to do so in the instant case did not work a substantial prejudice upon the defendant. \* \* \* Thus the fact that the jury was not instructed as to the statutory definition of the term did not constitute reversible error \* \* \*."

■■ While it would have been preferable for the trial court to instruct the jury on the definition of "recklessness", even though no such instruction was tendered, we find that after reviewing the record before us the evidence presented was such that no error was occasioned by the failure of the court to give such instruction. (See *People v. Gersbacher*, 44 Ill.2d 321, 325-326.) We therefore affirm the judgment of the trial court.

Judgment affirmed.

GUILD, P. J., and T. MORAN, J., concur.