THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD LYNN PARR, Defendant-Appellant.

Fifth District No. 74-343

Opinion filed January 27, 1976.

540

KARNS, P. J., concurring in part and dissenting in part.

Stephen P. Hurley and Ann L. Carr, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Dale A. Allison, Jr., State's Attorney, of Mt. Carmel (Bruce D. Irish and Robert J. Anderson, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by the defendant, Richard Lynn Parr, from a judgment of conviction entered by the circuit court of Wabash County on a jury verdict of guilty to the charge of involuntary manslaughter and the sentence of three to nine years' imprisonment imposed thereunder.

On appeal the defendant contends: (1) that he was not proven guilty beyond a reasonable doubt; (2) that the trial court erred in giving a non-IPI instruction on causation over the defendant's objection; and (3) that the three-to nine-year sentence was excessive in view of the defendant's record.

Addressing the first contention raised by the defendant we find a direct conflict in the testimony of two witnesses. The first witness, Rollie Sherman, testified that he saw the defendant hit the deceased, John Linson, causing him to close his eyes and fall to the concrete. Sherman testified that he saw the deceased move his legs after he fell. The defendant, on the other hand, testified that the deceased insulted him and grabbed him as he started to walk away. The defendant stated that he turned around fast and threw his arms up in the air because he thought the deceased was going to hit him. The defendant denied hitting the deceased. According to the defendant the deceased "stumbled backwards, * * * crossed his legs, and fell and hit his head."

The defendant claims that his version of the incident must be accepted over the version offered by Sherman. The defendant argues that Sherman's testimony was impeached by the other evidence presented during the trial. The State, on the other hand, claims that the defendant was impeached. We find it unnecessary to discuss either claim since our review of the record fails to disclose sufficient impeachment of either witness to require, as a matter of law, that his testimony be disregarded. In other words, nothing in the record makes the testimony of either witness inherently improbable or unbelievable. Consequently, the conflict in testimony was for the jury, as the trier of fact, to resolve. *People v. Nance*, 20 Ill.App.3d 182, 324 N.E.2d 652, 655.

A collateral issue raised by the defendant is that the State failed to prove, beyond a reasonable doubt, either that defendant's acts were performed recklessly [1] or that his acts were likely to cause death.[2] The de-

---

[1] Section 4—6 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 4—6), provides:

"Recklessness. A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. An act performed recklessly is performed wantonly, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning."

[2] Section 9—3 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 9—3), provides in pertinent part:

"Involuntary Manslaughter and Reckless Homicide.

(a) A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause death are such *as are likely to cause death or great bodily harm* to some individual, and he performs them recklessly." (Emphasis added.)

fendant contends that even if the State proved he "punched" the deceased, this act alone was not likely to cause death, nor was this act performed recklessly. We do not agree.

■■ An individual need not intend to inflict injury or death to be guilty of involuntary manslaughter (*People v. Higgins*, 86 Ill.App.2d 202, 229 N.E.2d 161); it is sufficient if the acts performed by such individual are likely to cause death *or great bodily harm* and such acts are performed recklessly (Ill. Rev. Stat. 1971, ch. 38, par. 9—3). "Recklessness" is a mental state involving criminal liability of a degree below that of intent or knowledge. To act recklessly falls short of acting intentionally. (*People v. Ford*, 56 Ill.App.2d 153, 206 N.E.2d 105.) Under the circumstances here present the jury was justified in finding that the defendant's striking of the deceased with his fist was an act performed recklessly, *i.e.*, with a "conscious disregard of a substantial and unjustifiable risk * * * and such disregard constitute[d] a gross deviation from the standard of care a reasonable person would [have] exercise[d] in the situation" (Ill. Rev. Stat. 1971, ch. 38, par. 4—6).

Similarly, the jury, which was properly instructed with respect to the elements of the offense of involuntary manslaughter, could have found, and obviously did find, that the defendant's striking of the deceased with his fist was an act likely to cause death or great bodily harm. We cannot say that this conclusion is erroneous; the evidence did not create a reasonable doubt.

■■ It is within realm of common experience for an actor to realize that the effect of a blow with a fist is *likely* to be far greater than the effect of the initial impact on the recipient. Indeed, frequently the objective in such confrontations is knocking down the opponent. Consequently, where an individual sees fit to strike another individual with his fists and, as a direct consequence of such blow, the recipient falls, strikes his head, and dies we see no justification for reducing the degree of criminal liability from involuntary manslaughter to some lesser offense. Accord: *People v. Towers*, 17 Ill.App.3d 467, 308 N.E.2d 223; *People v. Johnson*, 100 Ill.App.2d 13, 241 N.E.2d 584.

The defendant next contends that the trial court erred in giving a non-IPI instruction on causation over the defendant's objection that it erroneously and prejudicially emphasized one element of the crime over others which were of equal or greater importance. The challenged instruction was worded in the following manner:

> "In order for you to find the acts of the defendant caused the death of John H. Linson, it is not necessary that you find the acts of the defendant were the sole and immediate cause of death."

An identical instruction was approved by the Second District Appellate Court in *People v. Brown*, 9 Ill.App.3d 730, 293 N.E.2d 1. In *Brown* a pathologist testified that the victim's death "was caused by the severe beating he received from the defendant in combination with other factors, *i.e.*, high alcohol level and asphyxiation." (9 Ill.App.3d 730, 734, 293 N.E.2d 1, 4.) The court noted that,

> "(T)he instruction was obviously designed to inform the jury that they were required to consider and determine whether the death of Beach [the victim] ensued because of the acts of the defendant, and that it was not necessary that his acts were the sole and immediate cause thereof." 9 Ill.App.3d 730, 736, 293 N.E.2d 1, 4-5.

■■ In the instant case the defendant testified that the deceased stumbled and fell as a result of his inebriated condition. The analysis of the deceased's blood, contained in a pathological report, confirmed that the deceased had a high level of alcohol at the time of his death. In view of this evidence the jury could, as the trier of fact, have determined that the defendant did, in fact, strike the deceased, but that had the deceased not been intoxicated the fall would not have been fatal. The jury's verdict would then turn on *their* interpretation of the phrase "caused the death of" contained in the instruction defining involuntary manslaughter. To avoid such a dilemma from arising the State tendered the above instruction, which was approved by the trial court and given to the jury. We find this instruction to accurately state the law (*People v. Reader*, 26 Ill.2d 210, 186 N.E.2d 298; *People v. Dillon*, 28 Ill.App.3d 11, 327 N.E.2d 225; *People v. Brown*), without, as claimed by the defendant, *unduly* emphasizing the causation element of the offense of involuntary manslaughter.

■■ Finally, the defendant contends that the three- to nine-year sentence imposed by the trial court should be reduced. The State first argues that this issue has been waived by defendant's "failure to file a motion for sentence reduction pursuant to ch. 38, § 1005—8—1(d)." While the cited statute enlarges the trial court's power to modify the sentence it has imposed (see *People v. Cornett*, 29 Ill.App.3d 244, 329 N.E.2d 922; *People v. Marshall*, 30 Ill.App.3d 17, 331 N.E.2d 566), we are unaware of any authority for the State's proposition that the failure to file such a motion constitutes a waiver of any review of the severity of the sentence imposed. We expressly refuse to interpret the cited statute in the manner suggested by the State.

■■ In the instant case the defendant was convicted of involuntary manslaughter, a Class 3 Felony. (Ill. Rev. Stat. 1973, ch. 38, par. 9—3.) The maximum penalty for a Class 3 Felony is three and one-third years

to ten years' imprisonment. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1 (b)(4); see *People v. Gonzales,* 22 Ill.App.3d 83, 316 N.E.2d 800.) Thus, the defendant's minimum sentence of three years was only four months short of the maximum minimum sentence which could have been imposed by the trial court. While we are able to find sufficient evidence in the presentencing report and in the arguments presented at the hearing in aggravation and mitigation to justify a sentence in excess of the minimum, the record is devoid of any justification for the severity of the sentence imposed by the trial court. Consequently, pursuant to the power vested in this court by Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1973, ch. 110A, par. 615(b)(4)), we reduce the defendant's sentence to a term of two to six years' imprisonment.

Accordingly, the judgment of conviction entered against the defendant on the charge of involuntary manslaughter is affirmed and sentence imposed thereunder is modified to a term of two to six years' imprisonment. The cause is remanded for issuance of a corrected mittimus.

Affirmed, sentence modified, cause remanded.

CARTER, J., concurs.

Mr. PRESIDING JUSTICE KARNS, concurring in part, dissenting in part:

While I concur in the decision of the majority affirming defendant's conviction, I must respectfully dissent from the reduction of defendant's sentence from three to nine years to two to six years. Defendant's actions resulted in the death of another person. I cannot overlook the seriousness of the offense even though defendant did not intend that the victim die. In addition, defendant's record showed a marked propensity for violence and antisocial conduct. It is the function of the trial court to weigh the evidence of the seriousness of the offense and defendant's character and history. This court should not disturb the sentence imposed unless the trial court clearly abused its discretion. *People v. Taylor,* 33 Ill.2d 417, 211 N.E.2d 673 (1965).) I have expressed my views in *People v. Coultas,* 30 Ill.App.3d 81, 332 N.E.2d 169 (1975); *People v. Young,* 30 Ill.App.3d 176, 332 N.E.2d 176 (1975), and need not repeat them here. The sentence should be affirmed.