THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT ANTHONY, Defendant-Appellant.

Fifth District   No. 75-53

Opinion filed April 29, 1976.

G. J. MORAN, J., dissenting.

Stephen P. Hurley and Daniel M. Kirwan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:
Defendant-appellant, Robert Anthony, was convicted of armed robbery after a jury trial in Williamson County and sentenced to from 4 to 20 years. On appeal he contends that the court erred in denying his motion to suppress a post-indictment statement taken by police and also contends that the maximum sentence of 20 years is excessive.

No allegation is made about the sufficiency of the evidence and thus no

discussion of the facts of the case is necessary here. The offense occurred on February 27, 1974, in Marion, Illinois. On March 11, 1974, before defendant was in custody, an indictment was returned charging defendant and another man with the offense. Defendant was arrested on September 2, 1974, and thereafter appeared in court and was advised of the nature of the charge and the available penalties. Bail was set and the public defender was appointed to represent defendant. After defendant was returned to the jail, he was interrogated by a Marion police officer, Roger Rich. Eventually a written confession was taken which was later admitted into evidence. At trial, Rich related an oral statement given by defendant prior to the written statement. Both statements were substantially the same.

At the hearing on defendant's motion to suppress the oral and written confessions, Rich testified that before the interrogation he advised the defendant of his rights in the form dictated by *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). In addition, Rich advised the defendant that he could halt the questioning at any time, that he need not make any incriminating statements and that no threats or promises would be made. Defendant then gave Rich an oral statement admitting participation in the offense. Rich testified he then asked defendant to write the statement and defendant responded that he would rather have counsel present and inquired who would be appointed to represent him. Rich stated that he told defendant that the public defender would be appointed and that whether he wanted counsel present was up to him, apparently attempting to indicate that he would not press for the written statement. Rich then asked defendant how he intended to plead. Defendant stated that he intended to plead guilty and Rich told him that the written statement would make no difference. At that point defendant agreed to give the written statement.

Rich testified that he did not know counsel had been appointed and was under the impression that defendant was not aware that counsel had been appointed. Rich stated that had he known, he would not have attempted to procure a written statement and would not have questioned defendant if he wished to have counsel present. Rich stated that defendant appeared healthy and alert, understood the questions and answered them intelligently. No coercion was used.

On cross-examination, Rich testified that defendant did not inquire about counsel until after he gave the oral statement. Rich said that he told defendant that if he intended to plead guilty the written statement would be to his benefit.

Defendant testified that he was first approached by Rich in the anteroom of the jail. He stated that Rich informed him that Anthony's co-defendant had made a statement inculpating defendant. At that point

defendant told Rich that he wanted to speak with his counsel. Rich went to the phone and upon his return told defendant it would not matter whether he spoke to his lawyer because Rich and the public defender were "good friends" and "all drink coffee together." Defendant then told Rich that he would give the statement since it was all right with his attorney. Defendant denied admitting that he was guilty or intended to plead guilty but admitted making and signing the confession though he said he°could not read it "too good." Rich did not read the statement to him.

On cross-examination, defendant admitted that Rich had informed him of his rights and that he had understood them, although he denied being told that he could stop the interrogation at any time. Defendant again stated that he had asked to see his lawyer, but admitted that it was his decision to go ahead without him based upon Rich's statement that he could not come and that it was all right to give the statement.

Officer Rich was called in rebuttal and testified that he had attempted to contact the public defender at the time defendant requested the presence of counsel, after the oral statement was given. Upon his return, Rich told the defendant that the public defender was out of his office. It was at this point that Rich asked defendant how he intended to plead. After that time defendant did not request counsel and proceeded voluntarily to give the written statement.

After taking the matter under advisement, the court ruled that the statement was freely and voluntarily given, that defendant was informed of his rights and voluntarily waived his right to the presence of counsel and that no threats, promises, or coercion were employed to procure the statement. The motion to suppress was denied. At trial, Rich related the oral statement given by defendant and the written statement was admitted into evidence and presented to the jury.

The trial court in the instant case ruled that the defendant had voluntarily waived his right to counsel and that the confession was therefore admissible. Although the court did not specifically state that it believed the testimony of Rich over defendant, this fact is implicit in the court's ruling. We must accept its determination of the facts and will not disturb the ruling unless it is against the manifest weight of the evidence. *(People v. Pittman,* 55 Ill. 2d 39, 302 N.E.2d 7 (1973); *People v. Johnson,* 55 Ill. 2d 62, 302 N.E.2d 20 (1973).) Certain facts must therefore be accepted as true. Defendant was arrested after the indictment was returned and was in custody at the time the statement was taken and counsel had been appointed to represent him, although defendant had not yet consulted with counsel. Defendant was fully advised of his constitutional rights prior to the taking of the oral statement. Although there is some contradiction in the testimony, the record when read in its

entirety indicates that defendant made no attempt to exercise his right to counsel until after he gave the oral statement. At that point he inquired who would be appointed to represent him and indicated that he wished to speak with counsel before giving a written statement. Officer Rich then attempted to contact the public defender and was unable to reach him. Upon Rich's inquiry, defendant indicated that he intended to plead guilty and Rich advised him that a written statement could not harm him and would be to his benefit.

We are confronted, therefore, with two issues. The first is whether the fact that defendant had been previously indicted and was represented by counsel required, in and of itself, the presence of counsel prior to interrogation. The second question is whether Rich was required to halt the interrogation when defendant asked who would represent him and indicated his desire to have counsel present

■■ Defendant relies in part upon *Massiah v. United States*, 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199 (1964), which held inadmissible statements made by defendant to a co-defendant and surreptitiously overheard by government officials where defendant previously had been indicted and his counsel was not present. Illinois has expanded this doctrine substantially. In *People v. Lagardo*, 39 Ill. 2d 614, 237 N.E.2d 484 (1968), the court, relying on dictum in *People v. Milani*, 39 Ill. 2d 22, 233 N.E.2d 398 (1968), stated that *Massiah* required the exclusion of "all post-indictment incriminating statements obtained in the absence of counsel, even when not deliberately elicited by interrogation or induced by misapprehension engendered by trickery or deception." (39 Ill. 2d 614, 616, 237 N.E.2d 484, 486.) The court specifically noted, however, that Lagardo had not waived his right to counsel, thus leaving open the possibility of knowing and intelligent waiver. (See also *People v. Halstrom*, 34 Ill. 2d 20, 213 N.E.2d 498 (1966).) In *People v. Smith*, 42 Ill. 2d 479, 248 N.E.2d 68 (1969), the defendant was informed of his right to counsel in a post-arraignment interrogation and offered the opportunity to contact counsel; although, counsel had not been appointed. On appeal from his conviction, defendant challenged the admissibility of the statement made on *Massiah* grounds. The court did not discuss the *Lagardo* and *Milani* interpretation of *Massiah*, but held that by failing to request counsel, defendant had waived the right. The appellate court for the second district relied in part upon *Smith* in holding that defendant had waived the presence of counsel in a post-indictment interrogation where defendant knew of his right to counsel and expressly rejected the presence of counsel and overcame the stated reluctance of the police officer to take his statement. *(People v. Kelley, 10 Ill. App. 3d 193, 293 N.E.2d 158 (1973).)* A similar situation occurred in *United States v. Crisp*, 435 F.2d 354 (7th Cir. 1970), where the court held that even though

defendant had refused to sign a form containing a waiver of constitutional rights, his post-indictment statement made without the presence of counsel was admissible where defendant had "persisted in his expressed desire to pass information" to governmental authorities. The court stated that *Miranda* and *Escobedo v. Illinois*, 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758 (1964), indicated that "formal indictment is no longer the determinative event upon which constitutional safeguards hinge. By the same token, formal indictment does not absolutize constitutional rights or inexorably rigidify adversary postures." (435 F.2d 354, 358.) The court thus recognized that waiver could occur even after indictment and distinguished the "crucial feature" of *Massiah* as the "deliberate acquisition of information by police from a suspect under circumstances preventing his effective exercise or waiver of his rights to counsel at a time when those rights had clearly attached by virtue of his formal indictment." 435 F.2d 354, 358.

In *United States v. Springer*, 460 F.2d 1344 (7th Cir. 1972), the court was faced with the argument that once the government has or should have knowledge that counsel has been appointed, it cannot obtain information from the defendant except in the presence of counsel. In the alternative, defendant contended that in such a situation, the government bears a greater burden to show effective waiver. The court rejected the first argument, citing *Crisp* and other cases. The court, however, agreed "in principle" with the second contention, though stating that each case must be determined upon its facts. The court found ten separate factors present before it which supported its finding of effective waiver. Among those factors was an atmosphere devoid of pressure or coercion on the defendant when the statement was taken, a full evidentiary hearing before the trial court on the question of waiver of counsel, clear indication that defendant had been informed of and had understood his *Miranda* rights, no clear indication of record that the agent conducting the interrogation knew that counsel had been appointed or that defendant had appeared before a judicial officer, and evidence in the record that defendant had not been concerned about representation by counsel. The court relied heavily on the adjudication of the voluntariness of the confession and found "substantial support" for the trial court's decision. This court has cited *Springer* with approval for the proposition that *"Massiah* was [not] intended to be an absolute mandate, barring all statements made outside the presence of counsel" *(People v. Field,* 13 Ill. App. 3d 74, 81, 299 N.E.2d 754, 760 (1973)), although we were faced with substantially different facts.

As is obvious from the facts noted above, several of the factors present in *Springer* appear in the instant case. We believe that the court had before it sufficient evidence to find that defendant's oral statement was

voluntary, even though defendant had been indicted and counsel had been appointed to represent him. We note, however, that in so finding, we apply a higher standard of proof of effective waiver than that asserted by the State and found sufficient in *People v. Brooks*, 51 Ill. 2d 156, 281 N.E.2d 326 (1972); *People v. Pittman*, 55 Ill. 2d 39, 302 N.E.2d 7 (1973); *People v. Johnson*, 55 Ill. 2d 62, 302 N.E.2d 20 (1973); and *People v. Madison*, 56 Ill. 2d 476, 309 N.E.2d 11 (1974), all of which involved preindictment situations.

Having decided that defendant's oral statement was properly admitted, we must now address the question whether the written statement should have been taken from defendant after he expressed a desire to confer with counsel. In *Miranda v. Arizona*, 384 U.S. 436, 474, 16 L. Ed. 2d 694, 723, 86 S. Ct. 1602, 1628 (1966), the Court stated, "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning." There is no dispute in the record before us that defendant requested an attorney before giving the written statement. An attorney was not provided. The initial question, therefore, is whether defendant's actions following the request evidenced a voluntary abandonment of his request.

■■ The State relies upon *People v. Williams*, 131 Ill. App. 2d 149, 264 N.E.2d 901 (1970). In *Williams*, the defendant, during interrogation by an Assistant State's Attorney, requested that counsel be present. The prosecutor informed defendant that counsel would be appointed when he appeared in court but that no counsel was immediately available. Defendant then agreed to make a statement. The court found that although *Miranda* required the cessation of interrogation once counsel was requested, the defendant could make a statement without the presence of counsel if the subsequent decision was made knowingly and voluntarily. Even under the "heavy burden" of proving voluntariness mandated by *Miranda* the court found that defendant had voluntarily chosen to give the statement without the presence of counsel. The instant case, however, is distinguishable. Upon defendant's request for counsel, Rich called the public defender and determined that he was not available. At that point, having already taken an oral statement, Rich ascertained that defendant intended to plead guilty. He then told defendant, who was apparently unfamiliar with the criminal process, that the written statement would be to his benefit. We find that such an inducement to give the statement with no other showing of defendant's independent and voluntary decision, violated the mandate of *Miranda*. The written confession should have been suppressed.

Our decision, however, does not require reversal. As we have noted

above, defendant's oral statement was properly admitted and Rich related the substance of the statement to the jury. It contained sufficient facts to establish defendant's guilt beyond a reasonable doubt. In addition, the victim positively identified defendant at trial as the robber. A police officer who stopped a car matching the description given by the victim, identified defendant as a passenger in the vehicle who fled. Defendant's oral statement described his flight from the vehicle. We believe that the evidence against defendant was so overwhelming that the admission of the written statement was harmless beyond a reasonable doubt. (*Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967).) Although in *People v. Henenberg*, 55 Ill. 2d 5, 302 N.E.2d 27 (1973), the court declined to decide the question whether the admission of a confession could ever be harmless error, we believe that the case presents no bar to our so holding in light of the overwhelming evidence of the instant defendant's guilt. It also should be observed that the facts related by defendant in the oral statement were substantially identical to those contained in the written statement and clearly indicated defendant's guilt of the offense charged.

■■ Defendant next contends that the sentence of from 4 to 20 years is excessive in light of defendant's background and age. The minimum, of course, is mandatory for a Class 1 felony. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1.) The State contends that defendant has waived the issue by failing to move the trial court for modification. We have recently rejected this argument (*People v. Parr*, 35 Ill. App. 3d 539, 341 N.E.2d 439 (1975), and do so again.

Defendant cites *People v. Newlin*, 31 Ill. App. 3d 735, 334 N.E.2d 349 (1975), wherein we reduced a maximum sentence for burglary from 20 years to 8 years. We believe this case to be more similar to *People v. Young*, 30 Ill. App. 3d 176, 332 N.E.2d 173 (1975). Defendant entered an establishment with a loaded pistol, thereby endangering human life. In addition, the victim testified that defendant struck her with the pistol. Regardless of the age and prior record of this defendant, we cannot overlook the seriousness of the offense. We therefore decline to reduce the sentence imposed.

The judgment of the Circuit Court of Williamson County is affirmed.

Affirmed.

EBERSPACHER, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:
I agree with that portion of the majority opinion which concludes that the requirements of *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86

S. Ct. 1602 (1966), were not met with respect to the defendant's written confession and that the defendant gave his written confession involuntarily. However, I do not agree that the admission of the written confession into evidence was harmless error under the authority of *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967), and *People v. Henenberg*, 55 Ill. 2d 5, 302 N.E.2d 27 (1973). In *Chapman*, the United States Supreme Court said:

"[T]here are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error * * *."

(386 U.S. 18, 23, 17 L. Ed. 2d 705, 710, 87 S. Ct. 824.)

The eighth footnote to the opinion in *Chapman* indicates that the admission of an involuntary confession into evidence can never be harmless error. An identical holding is found in *Payne v. Arkansas*, 356 U.S. 560, 567-68, 12 L. Ed. 2d 975, 980-81, 78 S. Ct. 844 (1958). Because the standard that must be applied in determining whether an error involving a Federal constitutional right is harmless is a Federal standard, supplied by *Chapman*, the admission into evidence of the defendant's involuntary written confession must be regarded as prejudicial error, which necessitates a new trial for the defendant.

The majority's reliance upon *People v. Henenberg* is misplaced. The Illinois Supreme Court specifically said in that case that it was not "deciding whether the admission into evidence of a confession obtained in violation of *Miranda* can ever be harmless error." 55 Ill. 2d 5, 12, 302 N.E.2d 27, 30.

I also believe that the defendant's oral confession should not have been admitted into evidence. The rule of *Massiah v. United States*, 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199 (1964), as interpreted by the Illinois Supreme Court in *People v. Lagardo*, 39 Ill. 2d 614, 237 N.E.2d 484, (1968), and *People v. Halstrom*, 34 Ill. 2d 20, 213 N.E.2d 498 (1966), is that police officers may not elicit incriminating statements from a defendant, after he has been indicted, in the absence of counsel, unless the defendant voluntarily and knowingly waives his right to the presence of counsel before giving the incriminating statements. The defendant in the present case did not make such a waiver before making his oral confession to the police investigator. Consider the following testimony of the police investigator on direct examination by the State's attorney at the hearing on the motion to suppress evidence:

"Q. Did he [the defendant] have occasion to have a conversation with you prior to giving any statement, with reference to counsel?

A. No, not before he had been given his rights.

Q. I mean after he had been given his rights, prior to any questioning?

A. Yes.

Q. What did he say to you with reference to counsel?

A. He asked me who his counsel would be.

Q. And what did you say?

A. I told him that if he couldn't afford one, it would be our public defender. And he asked me who that was and I said Kenneth Hubler.

Q. And then what did he say?

A. Well, we went ahead and we talked about it and he gave me a statement."

I interpret this testimony to mean that after the defendant had been read the *Miranda* warning, but before he was questioned and before he made his oral confession, the defendant made some inquiry about having a lawyer. This renders it impossible for the State to carry its heavy burden of showing that the defendant voluntarily and knowingly waived his right to the presence of counsel before giving his oral confession. Admitting the oral confession into evidence, therefore, was a violation of the rule of *Massiah, Lagardo,* and *Halstrom.*

Moreover, since the defendant indicated before the questioning that led to his oral confession that he was interested in having a lawyer, the police investigator's questioning him in the absence of counsel was in violation of the principles announced in *Miranda.* Thus, the circuit court's failure to suppress the oral confession was error, and the defendant should be given a new trial.