THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN P. SMITH, Plaintiff in Error.

*Opinion filed April 18, 1912.*

1. EVIDENCE—*rule as to admission of testimony upon promise of counsel to show its materiality.* Testimony may be admitted upon the promise of counsel to subsequently show its materiality to the issues involved, and in such case if enough evidence tending to show such materiality is introduced to make it a fair question for the jury the testimony should not be excluded.

2. CRIMINAL LAW—*when refusal to exclude evidence because not connected with defendant is error.* Evidence of the sale of a revolver by a pawnbroker, admitted in a murder trial upon the promise of the prosecution to connect the evidence with the defendant, should be excluded even though there may be some testimony tending to show that the sale was made to the defendant, where there is no evidence that the revolver with which the deceased was killed was the one which the witness sold.

3. SAME—*when giving instructions stating law of self-defense is error.* Giving instructions offered by the prosecution stating the law of self-defense is error, where the defendant made no claim that the killing was in self-defense but contended throughout that the deceased was accidentally shot with his own revolver while attempting to shoot the defendant; nor can the giving of such instructions be justified because the prosecution proved an alleged admission by the defendant tending to show that he shot the deceased in self-defense, where the defendant denies that he made the admission testified to.

4. APPEALS AND ERRORS—*when objection to instruction may be considered though abstract does not contain all instructions.* A claim that an instruction mis-states the law cannot be considered unless the abstract contains the whole series of instructions; but such is not the rule where it is claimed that the instruction should not have been given at all because it presented an issue not involved in the case, and it is admitted that the complaining party asked no instruction on such issue.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. M. M. GRIDLEY, Judge, presiding.

EDWARD J. SMEJKAL, JOSEPH Z. KLENHA, and ADOLPH J. KRASA, (OTTO F. RING, of counsel,) for plaintiff in error.

W. H. STEAD, Attorney General, JOHN E. W. WAYMAN, State's Attorney, and W. EDGAR SAMPSON, (EDWARD S. DAY, of counsel,) for the People.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Plaintiff in error, John P. Smith, was indicted, tried and convicted in the criminal court of Cook county of the murder of John C. Smith by shooting him with a revolver. Since the judgment must be reversed and the cause remanded for another trial for errors of law hereinafter pointed out, only a brief outline of the facts will be stated, without discussing them.

The deceased, at the time he lost his life, was engaged in the real estate business on Colorado avenue, near Fortieth avenue, in the city of Chicago, and lived on Harrison street a little west of Forty-first avenue, a block and a half or two blocks from his place of business. In passing from his office to his home he would ordinarily walk on Colorado avenue south-west of Fortieth avenue, then north on Fortieth avenue and west on Harrison street to his home. The plaintiff in error is a printer and resided at 208 North Forty-third avenue, and had resided there for more than ten years. Plaintiff in error was separated from his wife. She was a stenographer and employed by the deceased in his real estate office. The evidence shows that the two men barely knew each other by sight. The evidence does not show any previous difficulty or the existence of any ill-feeling between the deceased and plaintiff in error. If they had ever had any dealings or conversation with each other prior to the

night of the homicide the evidence does not show it. There was no one immediately present at the time of the homicide, and the following account of it is based largely upon the testimony of plaintiff in error. On the evening of November 30, 1910, plaintiff in error was going west on Harrison street from Fortieth avenue, and when passing Mulvihill's saloon heard loud talking and noise coming from the saloon. He walked to the door of the saloon, which is reached by a step or platform above the sidewalk level, in order to look through and see what was going on in the saloon. While he was looking through the door of the saloon, in a stooping position, he heard someone close by say, "What are you doing there?" or words to that effect. Upon looking around he saw the deceased standing on the sidewalk, ten or fifteen feet away, looking at him. Plaintiff in error replied to the deceased, "It is none of your business." Thereupon the deceased said, "It ain't, eh? I will show you," and so saying advanced toward the plaintiff in error and when within a few feet of him drew a revolver. Plaintiff in error, being unarmed, as he says, grabbed for the pistol, and in the struggle that ensued for the possession of the weapon it was discharged but did not strike either party. Plaintiff in error testifies that he had hold of the gun by the barrel and the deceased held it by the handle, and plaintiff in error was making an effort to push the muzzle of the pistol away from himself. While the men were engaged in this struggle over the gun it was discharged a second time, about eight or ten seconds after the first shot. The encounter occurred on the platform in front of Mulvihill's saloon. The men apparently first came together near the door, but when the revolver was discharged the second time they were near the outer edge of the platform, and when the second shot was fired the deceased fell over backward off the platform into the street and plaintiff in error fell over or was pulled over on top of him. · There were a large number of persons in Mulvihill's saloon, and others in the vicinity, who heard

the shots. There were two police officers in the saloon and another one was within two hundred feet of the scene of the trouble. Attracted by the shots, the persons in the saloon, including the police officers and others on the street, rushed to the scene of the difficulty. Within a very few seconds after the last shot was fired quite a number of persons had assembled at the place where the killing occurred. The witnesses all agree that when they arrived at the place where the men were, the deceased was lying on his back and plaintiff in error was upon him, striking the deceased about the head and face with his fists. The deceased was dead, or very nearly dead, at that time. A revolver, with two empty shells and three loaded chambers, was found in the right hand of the deceased, with the handle in or under the palm of his hand. Plaintiff in error was immediately arrested and taken into the saloon and found to have no weapon of any kind in his possession. An examination of the body of the deceased showed that his death had been caused by a gunshot wound which entered his body about one and a quarter or one and a half inches to the left of the middle line of the body and about three inches above the pit of the stomach. The bullet ranged from left to right through the body, passing through the breast bone one-half inch to the left of the middle line, through the right ventricle of the heart, through the heart's sac, through the diaphragm and right lobe of the liver, and was found in the free peritoneal cavity. While in the patrol wagon on the way to the police headquarters plaintiff in error was asked why he shot the deceased. He said that he did not shoot him, and related the struggle over the revolver and the discharge of the weapon as above narrated, and so far as the evidence discloses, plaintiff in error has consistently maintained that explanation of the affair from that time down to the trial. It is true that officer Sullivan testifies that in answer to a question he asked plaintiff in error as to why he shot the deceased, before the plaintiff in error was taken

away from the scene of the difficulty, he said, "He was try-
ing to shoot me."

Two theories were presented to the jury growing out of
these facts. On behalf of the People it was contended that
the shot was fired by plaintiff in error under circumstances
constituting him guilty of murder, and that after having
killed the deceased plaintiff in error placed his revolver in
the hand of the deceased. Plaintiff in error contends, as
above stated, that the revolver was discharged by the de-
ceased during the struggle and while plaintiff in error was
trying to prevent being shot by the deceased. In view of
the situation presented it will readily be seen that it was
very material to determine the ownership of the revolver.
Upon this question the People introduced A. Berger, a
pawnbroker, who testified that a person giving the name of
Joseph P. Smith purchased a gun from witness, and he de-
tailed a conversation had with the person to whom he sold
the gun. In accordance with the ordinances of the city of
Chicago the pawnbroker filled out a blank slip furnished by
the city, giving a description of the person who purchased
the gun, and another slip giving the description of the
weapon. These two papers were delivered to the police de-
partment after the shooting, and on the trial the paper giv-
ing the description of the person was produced, introduced
and afterwards stricken from the evidence, but the paper
giving a description of the gun, number, etc., was not pro-
duced. This witness could not identify plaintiff in error as
the person who purchased the gun. The sale in question
was made something over three months before the homi-
cide. When the witness Berger was on the stand and de-
tailed the conversation that took place at the time of the
sale of the revolver and what he did in the way of making
a record of the sale, describing the purchaser, counsel for
plaintiff in error objected to the evidence on the ground that
it was not connected with plaintiff in error. Thereupon
counsel for the State said it would be connected later. The

objection was thereupon overruled and the evidence allowed to remain before the jury. At the close of all the evidence counsel for plaintiff in error again moved to strike out this evidence on the ground that it had not been connected with the transaction under investigation. This motion was overruled and plaintiff in error excepted. Officer Scott testified to the police method of keeping a record of the purchasers and owners of firearms. The information as to sales includes a description of the weapon, the purpose for which the same is purchased and a general personal description of the purchaser, which is written by the seller at the time the sale is made and is signed by the purchaser in his presence. In making up this data the seller makes a carbon copy. The original is transmitted to the police department and the carbon copy remains in the possession of the seller. The original is recorded in the police department and then transmitted to a police officer in the vicinity where the purchaser resides. The police officer to whom the original is sent is expected to call on the purchaser and verify the information and to make such further investigation in regard to his character as he deems necessary. If the information obtained by the investigating officer is satisfactory, a permit is issued to the purchaser authorizing him to own the weapon purchased. If the investigation was made in this case the officer who conducted the same was not produced as a witness. When Berger was first on the stand as a witness he had in his possession his original carbon copies of the descriptions of the purchaser and of the gun sold. No part of the description of the gun sold by Berger was given to the jury, either from memory or otherwise. Certain facts in relation to the personal description of the purchaser were stated. Some of these facts apparently corresponded with plaintiff in error while in other respects they failed to correspond. The first name was Joseph, while plaintiff in error's name is John. The purchaser of the Berger weapon was described as a man forty-eight years of age, with gray

hair and mustache, five feet and seven and one-half inches high, and weighing 160 pounds. Plaintiff in error is forty-five years old, weighs 145 pounds, is five feet and six inches tall, has gray hair and no mustache, but plaintiff in error admits that he may have had a mustache in 1910, as he sometimes wore one. The purchaser of the Berger pistol gave his occupation as a printer, working for Buckley & Co. Plaintiff in error was a printer employed by Blakely & Co. After Berger had testified, he was on a subsequent day again called to the witness stand for the People, and he testified that the police department had called on him and obtained possession of his carbon copies and had not returned them. He was then presented with what purported to be a police copy of the carbon copy and an effort was made to have him identify it as a true copy, but he was unable to do so, and no further effort was made to have the contents of his record of the sale go before the jury. Plaintiff in error urges a reversal because the court refused, on his motion, to strike out all this evidence in relation to the sale of the firearm by Berger.

There was nothing improper or irregular in allowing this testimony to go to the jury without connecting it with the transaction under investigation, upon the promise of the attorney offering the testimony that it would be subsequently connected, but testimony admitted under such circumstances should always be excluded afterward, upon motion being made for that purpose, unless evidence has been offered which tends to show its relevancy to the issues being tried. Nor is it necessary that the party on whose behalf testimony is received upon the promise of counsel to show its materiality subsequently, should afterward connect such testimony with the issues involved, by undoubted evidence. If sufficient evidence is offered to make it a fair question of fact for the jury to determine such evidence should not be excluded, but if the subsequent evidence does not tend to connect such testimony with the issues involved

it should be excluded when the court is asked to do so at the close of all the evidence of the party offering such testimony. If the inquiry here had been whether plaintiff in error purchased a pistol from Berger in August preceding the homicide the motion to exclude the testimony might have been properly denied, since there is some evidence slightly tending to identify plaintiff in error as the person who purchased a firearm of some description from the witness Berger. But that was not the vital point under investigation. The question was whether the plaintiff in error owned the particular pistol that killed the deceased, and if he had purchased the pistol, which admittedly was used to destroy the life of the deceased, three months before, it was important testimony tending to show that plaintiff in error was in the possession of the pistol at the time the fatal shot was fired. But even if plaintiff in error bought any number of pistols prior to the homicide, that circumstance would not tend to prove that he was the owner of the particular weapon which caused the death of the deceased. There is not a scintilla of evidence in the record tending in any degree to identify the pistol which was found in the hand of the deceased as the same weapon, or even a similar weapon, to the one sold by Berger. Some evidence tending to show that the pistol which was used on the occasion of the homicide was the same one that had been purchased by a person supposed to be plaintiff in error was indispensable to connect this testimony with plaintiff in error. So far as this record shows, the pistol sold by Berger may have differed from the one found at the scene of the difficulty in every respect. The court erred in refusing to strike out the testimony in regard to the sale of a pistol, at the close of all the evidence, because it was not connected, as the State's attorney had promised it should be when it was admitted.

There is another serious error in this regard. As already indicated, plaintiff in error has maintained throughout that the deceased was shot with his own weapon by

accident, in an effort made to prevent the deceased from shooting him. This was the theory of his defense before the jury. The court, however, at the request of the People gave six instructions as to the law of self-defense, two of which are substantial copies of sections 148 and 149 of the Criminal Code. There was no question of self-defense in this case. When self-defense is relied on, it presupposes that the accused committed the act and that defense is invoked as a justification. Plaintiff in error offered no instructions upon the subject of self-defense. He denied the killing throughout and rested his defense upon the theory that he did not kill the deceased. In the case of *Healy* v. *People,* 163 Ill. 372, the question now under consideration was presented to this court. In that case the court gave two instructions substantially in the language of the statute, as was done in the case at bar, on the subject of self-defense. The defendant there did not rely on self-defense. In discussing the error in thus giving instructions upon an abstract proposition of law not involved in the case, this court, on page 384, said: "The fair test of the propriety of a charge cannot be whether, in the abstract, it is right. It must be taken in view of the evidence of the facts charged on which the jury is to respond. A charge in the abstract, as a mere legal proposition, might be perfectly inoperative and harmless, when, however, referred to a certain set of facts and circumstances in the proof it might have a most important and conclusive influence on the jury in forming their verdict. There was much in these instructions, coming from the court to a jury unlearned in the law and unfamiliar with legal phraseology, calculated to prejudice in their minds the defense of plaintiffs in error. One of them told the jury, among other irrelevant things, that a 'bare fear of any of these offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable person,

and that the party killing really acted under the influence of those fears and not in a spirit of revenge.' Who can tell what the jury understood was meant by this part of the charge of the court? It cannot be supposed that they would not rely upon these instructions as having some important bearing upon the case. If we could see that, whether relied upon or not, they could have produced no injury, then it would follow that the error was harmless. But it cannot reasonably be said that the accused were not prejudiced. On the contrary, in view of the defense made, we think these instructions, although given as copies of the statute, were calculated to mislead the jury to the injury of the defendants on trial for so grave a charge." We are compelled to hold that the court erred in giving the instructions on the subject of self-defense at the instance of the People.

To this contention of plaintiff in error the People suggest two answers. It is said, first, that the question is not properly presented, since all of the instructions given on the trial are not in the abstract, and numerous cases are cited where it is held that this court will not consider an error assigned upon an instruction unless the abstract affords a means of examining the instruction in the light of the entire series that were given. In our opinion that rule does not apply to the situation presented by this record. It often happens that a mis-statement of the law in one instruction is neutralized and rendered harmless by other instructions given in the case, and where an instruction is attacked as being an erroneous statement of the law, the rule is, as stated by the People, that the court will not consider such error unless the whole series of instructions are abstracted. But here the objection is not that the instructions upon the law of self-defense are inaccurate, but the objection is that the court erred in giving any instructions on the subject at all. An error of this kind could not, in the very nature of things, be cured by other instructions. Had plaintiff in error asked instructions upon the subject of self-defense he

would have thereby waived his right to insist upon this error, but it is conceded that the abstract shows all of the instructions that were given on the subject of self-defense and that none were asked or given on behalf of plaintiff in error. We think the abstract sufficiently shows everything necessary to enable this court to determine the error relied upon, and that is all that the rule requires.

The second answer made to this contention is, that there was some evidence of admissions made by plaintiff in error which, if believed by the jury, tended to show that he voluntarily fired the shot. This contention is mainly based on the testimony of officer Sullivan, which has already been referred to. This testimony was not introduced by plaintiff in error. It was no part of his defense and he denied having made the statement testified to by Sullivan. It would be manifestly unfair and unjust to thus permit the prosecution, by the introduction of some testimony, to follow it up by a set of instructions on the law of self-defense, thus placing plaintiff in error in the attitude of confessing the killing and seeking to excuse the same on the ground of self-defense. The giving of these instructions tended to lead the minds of the jury away from the real issue being tried, to a consideration of the question whether the homicide was excusable on the ground of self-defense. A set of instructions on the subject of self-defense in this case, coming from the court to the jury, were liable to cause the jury to believe that the court disbelieved the theory of the defense based upon the plaintiff in error's testimony, and to suggest to the jury that the real question in the case was not whether the killing was accidental, but whether it was excusable on the ground of self-defense.

For the errors indicated the judgment of the criminal court of Cook county is reversed and the cause remanded for a new trial.          *Reversed and remanded.*