**People of the State of Illinois, Plaintiff-Appellee, v. William Oparka, Defendant-Appellant.**

**Gen. No. 52,661.**

First District, Second Division.

January 21, 1969.

Richard W. Burke, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Anthony J. Onesto, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

The defendant, William Oparka, and his brother, Fred Oparka, were charged with the crime of rape. After a jury trial, both men were found guilty and sentenced to the penitentiary for a term of 60 years. Defendant appealed to the Supreme Court, and that court transferred the appeal to this court on the finding that no substantial constitutional issue was presented. Fred Oparka appealed his conviction to this court, and in People v. Oparka, 85 Ill App2d 33, 228 NE2d 291 (1967), that conviction was affirmed.

Defendant appeals, contending that he was not proved guilty beyond a reasonable doubt; that introduction of evidence concerning a certain wristwatch constituted reversible error; that introduction of evidence concerning an ether bottle constituted reversible error; and that the trial court improperly restricted the cross-examination of one of the State's witnesses.

Since the facts were set forth in considerable detail in the Fred Oparka opinion, supra, we deem it necessary to summarize the facts only briefly in this opinion. The complainant, a student nurse at South Chicago Community Hospital, identified defendant and his brother as the two men who forced their way at gunpoint into a parked automobile in which she and her companion were parked near the hospital. After forcing the escort into the back seat, they then drove to a secluded area some blocks

160

away. Defendant chloroformed her escort, rendering him unconscious. Fred Oparka ripped the complainant's clothes off and both men beat and raped her, defendant striking her on the head with a gun. After the rapes, the defendant unsuccessfully tried to chloroform her, and then the pair bound and gagged her. She eventually released herself, and she and her companion were taken to a hospital. Approximately four weeks later, two police officers arrested Fred Oparka as he drove defendant's automobile, and found a loaded gun in the car. The officers noted that he matched the description of one of the rapists. On the same day, defendant was arrested by two other police officers. At the time of his arrest, defendant asked the police officers, "Are you out here to arrest me for the rape of that girl on the south side?" The officers testified that prior to this statement they had not informed defendant of the nature of their visit. The complainant identified the gun found in defendant's automobile as the one used by defendant, and also identified defendant and his brother at a lineup and at trial.

For the defense, a bartender testified that defendant was with him during the entire evening, first at the tavern where the witness was employed and then at a restaurant. A friend of defendant's sister testified that some months after the crime, she met the complainant who stated that she would be unable to identify her assailants because it was dark. In rebuttal the complainant denied making such a statement.

■■ Defendant first contends that the State failed to prove him guilty beyond a reasonable doubt, arguing that the complainant's identification could not have been positive because of the circumstances under which the rape took place. We have already found in the Fred Oparka case, supra, that the complainant's testimony was consistent and that her descriptions to the police of her assailants were accurate. She identified the defendant at a lineup, and we find from the record in the instant

case that her identification testimony as to defendant was positive and not shaken on cross-examination. As was stated in the Fred Oparka case, the question of the accuracy of a description and the validity of an identification are questions of fact and we find nothing in the record compelling us to disturb the finding of the jury. While the complainant testified that she did not get a good look at defendant and his brother when they first came up to the car because of the poor lighting conditions on the street, she testified that she sat between the two men as they traveled to the location where the rapes took place. She further testified that she was able to see the attackers as they drove with the aid of oncoming headlights and from the lights of the dashboard of the car. She had ample time and opportunity to observe her assailants not only during the trip, but also during the time when the rapes were occurring, and after the rapes when the defendant tried to chloroform her, and while she was being bound and gagged.

Defendant next contends that introduction of evidence concerning a wristwatch was prejudicial and constituted reversible error. Mildred Peters, a nurse and fellow worker of defendant at a laboratory, testified that about the time of this occurrence, defendant showed her a watch which she described as a nurse's watch and told her that he found it in the ash tray of his car. The record discloses no testimony by the complainant that she had a watch on the night of the occurrence, or that it had been taken from her. The State contends that the complainant in fact had testified that the watch had been taken from her by the assailants, but that such testimony was inadvertently omitted from the record. After certification of the record, the State petitioned the trial court to amend the record, but the trial court denied that motion.

In People v. Oparka, 85 Ill App2d 33, 228 NE2d 291 (1967), we stated at page 41:

> "While it is true the record does not contain evidence that a wristwatch was taken from (the complainant), it appears that the trial judge, the prosecuting attorney and the defense attorney all assumed this fact to be in evidence."

At one point during the trial, outside of the presence of the jury, the trial judge stated:

> "Might have been better, of course, if the State would have had the complaining witness describe the watch with some degree of accuracy, but that in itself only goes to the weight. She said it was a nurse's watch."

Defense counsel made no objection or comment to this statement by the judge, and in fact during his argument for a directed verdict counsel objected to the evidence as to the defendant only because the description of the watch by Mildred Peters constituted a conclusion, not because her testimony was irrelevant or because no foundation was laid for its introduction. In its closing argument, the State also assumed, without objection by defendant, that the complainant had testified about a watch being taken from her, and on that basis, the prosecuting attorneys made several references to the watch.

In the Fred Oparka case, the defense argued that the State's remarks about the watch in closing argument were erroneous; while in the instant case defendant also contends that the testimony of Mildred Peters about the watch was error. In that case, this court found that the evidence concerning the watch was merely cumulative, and although error as to Fred Oparka, it was not prejudicial and did not require reversal. We stated at pages 41-42:

> "Where the evidence shows a defendant guilty beyond all reasonable doubt the verdict will not be set

aside where a different verdict would not have been reached had no error intervened."

■■ Likewise, we find in the case at bar, that since there was no testimony in the record by the complainant about a watch, the court erred in allowing testimony and references to the watch, but that such error was not prejudicial and does not require reversal. As stated in People v. Oberholdt, 359 Ill 39, 193 NE 608 (1935), ". . . the admission of incompetent testimony will not constitute reversible error if it appears that such testimony could not reasonably have affected the result." At p 40. The evidence in the instant case shows that the complainant was an observant and credible witness, that her identification was positive and consistent, that defendant accurately fit the description given to the police officers, and that defendant had knowledge of the rape at the time of his arrest. The cases cited by defendant, People v. Smith, 254 Ill 167, 98 NE 281 (1912) and People v. Berkman, 307 Ill 492, 139 NE 91 (1923) are clearly distinguishable from the instant case. Both of those cases involved the introduction of guns which were not linked to the commission of the crimes charged. No such importance can be attached to testimony about the wristwatch, and we find that no prejudicial error was committed.

Defendant next argues that reference to a brown bottle marked by the State as an exhibit for identification but not introduced into evidence, was prejudicial error. The complainant testified that defendant poured chloroform or ether out of a bottle into a handkerchief and put it to her escort's face. She also testified that a small brown bottle was used by defendant, but that she did not know whether it was the same bottle which was shown to her in court. She testified on cross-examination that the bottle shown to her in court was similar to the one used by defendant. Mildred Peters testified that bottles of ether were kept in unlocked cabinets at the laboratory

where she and defendant were employed. She also testified that defendant washed such bottles, and about the time of the crime in question, one of the bottles was missing. She testified that she could not distinguish the bottle shown to her in court from similar bottles at the laboratory. The court promptly sustained defendant's objection to the bottle; the State withdrew it as an exhibit and did not attempt to have it introduced into evidence. In their closing remarks, the assistant State's Attorneys referred to the ether used in the rape, the washing of the bottles by defendant, and that the bottle used in the crime was similar to the one seen in court.

 Evidence that defendant used a bottle of ether or a similar substance in the commission of the crime, and that in his employment he had access to ether and its containers was properly introduced into evidence. The defendant now argues that the State "flouted" the bottle before the jury, but the record clearly reveals that after objection, the State withdrew the exhibit and that the bottle was not displayed again. The State did not attempt to prove that the bottle shown in court was the one used in the crime, or that such a bottle was taken from defendant, nor did the State ever refer to it as such. The only evidence that the bottle used in the crime resembled the one shown in court was elicited on cross-examination. References to this testimony in closing argument, to which there was no objection, were not improper.

Defendant finally contends that the trial court erred in improperly restricting the cross-examination of one of the State's witnesses. Dr. Albert G. Weiss, physician who treated the complainant at the hospital on the evening of the occurrence, testified on direct examination as to the results of his physicial examination. During cross-examination he testified that his examination of complainant took place about one hour after the occurrence and that he had a conversation with the girl. He then

was asked whether the complainant described her assailants, and the court sustained the State's objection to the question.

 The latitude permitted in the cross-examination of witnesses at trial is a matter within the sound discretion of the trial court and its rulings in this regard will not be upset on review unless there has been a plain abuse of discretion. People v. Provo, 409 Ill 63, 97 NE2d 802 (1951). On cross-examination, a party is restricted to inquiry concerning matters covered during direct examination of a witness. People v. DuLong, 33 Ill2d 140, 210 NE2d 513 (1964). Clearly the question asked went beyond the scope of direct examination.

██ ██ Moreover we reject defendant's contention that complainant's description of her attackers was a spontaneous declaration. While the contents of a spontaneous declaration may be shown in their entirety, People v. Damen, 28 Ill2d 464, 193 NE2d 25 (1963) the Supreme Court has held that in order for a statement to be a spontaneous utterance and therefore admissible, the occurrence must be sufficiently startling to produce a spontaneous utterance, there must be an absence of time to fabricate, and the statement must relate to the circumstances of the occurrence. People v. Poland, 22 Ill 2d 175, 174 NE2d 804 (1961). Without considering defendant's failure to make an offer of proof, we conclude that even if the complainant had described her assailants to a doctor conducting a physical examination at a hospital about an hour after the occurrence, it would not qualify as a spontaneous expression of her feelings relating to the circumstances of the crime. Accordingly, such an identification would not be admissible.

For the foregoing reasons the judgment of the Circuit Court is affirmed.

Judgment affirmed.

LYONS, P. J. and BURKE, J., concur.