THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSE RODRIGUEZ *et al.*, Defendants-Appellants.

First District (4th Division)    No. 79-1027

Opinion filed May 14, 1981.

David R. Jordan, of Chicago, for appellant Jose Rodriguez.

James J. Doherty, Public Defender, of Chicago (Aaron L. Meyers, Assistant Public Defender, of counsel), for appellant Nestor Luis Mercado.

Bernard Carey, State's Attorney, of Chicago (Kevin W. Horan, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Nestor Luis Mercado, Jose Rodriguez, and Frank Nuncci were charged by information with attempting to murder and with committing aggravated battery upon Ernesto Ramirez. Following the trial the jury found Mercado and Rodriguez (the defendants) guilty of aggravated battery and attempt murder. Finding that the aggravated battery convictions merged into the attempt murder convictions, the trial court entered judgment only on the latter. The defendants were each sentenced to a term of 15 to 25 years. Nuncci was convicted of aggravated battery but that conviction is not a part of this appeal. Mercado and Rodriguez contend on appeal that (1) it was reversible error for the trial court to refuse the requested jury instructions concerning the justifiable use of force, and (2) they are entitled to a new trial on the ground that the State exercised its peremptory challenges to systematically exclude blacks from the jury. Mercado also contends that (1) the trial court erred in denying his motion to suppress a statement made to the police; (2) he was denied equal protection because under Illinois law there is no offense of attempt voluntary manslaughter; and (3) the trial court erred in failing to vacate his aggravated battery convictions.

Ramirez testified that at approximately 3 a.m., on August 27, 1977, he left a tavern located at Milwaukee Avenue and Sacramento Boulevard in Chicago. Once outside the tavern he saw the defendants and Nuncci beating another man. Ramirez, a man he knew as Felipe, and a man who had asked Ramirez for a ride home all entered Ramirez's car. As he was driving away Ramirez yelled to the defendants that they were being "very abusive." The defendants then approached Ramirez's car with tire jacks in their hands. Ramirez drove away. A few moments later Ramirez stopped his car for a red light. The defendants, Nuncci and two women pulled up behind Ramirez's car in a station wagon. The defendants and Nuncci walked toward Ramirez. Ramirez drove through the red light to get away. The defendants followed in the station wagon. While being followed, Ramirez drove at approximately 70 miles per hour.

After driving around for a short while Ramirez applied his brakes slowly. The car in which the defendants were riding rammed into Ramirez's car. To assess the damage, Ramirez pulled into a well-lighted gas station at Irving Park Road and Sacramento Boulevard. The station wagon followed Ramirez into the gas station. The defendants and Nuncci got out of their car and approached Ramirez's car carrying tire jacks. The two men who had been riding in Ramirez's car fled. Ramirez did not see them again that night.

The defendants and Nuncci broke Ramirez's car windows with the tire jacks and told Ramirez, "now we are going to get you." The three men

walked toward Ramirez and he backed away. No one was in the area besides Ramirez, Nuncci, and the defendants.

As Ramirez walked backwards the defendants and Nuncci lifted the tire jacks as if to swing at Ramirez. The three men were around him. Suddenly, Ramirez received a blow on the back of his skull. From where the defendants had been standing, it appeared to Ramirez that Mercado had dealt the blow. Ramirez did not know what happened after that.

Chicago police officer Christopher Pepol testified that at approximately 4 a.m., on August 27, 1977, he was off duty, driving past the gas station on his way to buy breakfast. He heard the sound of shattering glass. Turning toward the sound, he observed the defendants and Nuncci smashing the windows of Ramirez's car. Ramirez was standing next to the car. Pepol turned into the gas station and saw the defendants and Nuncci "kicking, beating, and hitting" Ramirez, who was lying on the ground. Mercado and Rodriguez had jacks in their hands while they were beating Ramirez. Ramirez was lying in a pool of blood. His skull was split open and Pepol could see part of his brains. Ramirez's face was lacerated. According to Pepol, Ramirez was conscious.

Dr. Jeffery Karasick, a neurosurgeon, testified that he examined Ramirez on August 27, 1977. He observed a "several inch long" laceration in the back of Ramirez's head, a laceration over Ramirez's eye and several smaller lacerations on Ramirez's face. X rays revealed a compressed skull fracture. Bone fragments were broken off from the skull and pushed inward. Such an injury is usually the result of a blow from an instrument and does not generally result from a blow from someone's hand. Such an injury would not result from falling to the ground unless there was a sharp object protruding from the ground. Karasick performed surgery to remove the bone fragments.

According to defense testimony, Mercado was at the tavern drinking. Rodriguez, Nuncci and Nuncci's sister, Carmen Vivar drove to the tavern in Mercado's car to pick him up. There was a commotion in front of the tavern, but Mercado, Rodriguez, and Nuncci testified that Mercado was not involved in a fight. As the defendants and Nuncci were walking to their car outside the tavern, Ramirez tried to run them down with his car. The defendants and Nuncci entered Mercado's car. They were chased by Ramirez. After a while Ramirez's car hit the back of Mercado's car. Thereafter the defendants and Nuncci followed Ramirez. The two vehicles pulled into a gas station at Irving Park Road and Sacramento Boulevard. Ramirez got out of his car carrying a tire jack.

Mercado broke the windows of Ramirez's car with a metal pipe. After breaking the windows he dropped the pipe and approached Ramirez. Ramirez swung the jack he was carrying, striking Mercado on

the back of the neck, the shoulder, and the lower chest and stomach area. Mercado was bruised and bleeding. He tried to avoid the blows, but he did not hit Ramirez. While Ramirez hit Mercado, Mercado tried to get the jack away from him. Nuncci and Rodriguez were not nearby.

Mercado testified that he saw Ramirez fall to the ground. Ramirez fell backwards. He was bleeding after he fell. On cross-examination Mercado testified that he saw Ramirez on the ground but he did not see Ramirez actually fall. No one hit Ramirez.

Rodriguez testified that Ramirez tried unsuccessfully to hit him with the jack. Rodriguez backed away. Then Ramirez backed away. The next thing Rodriguez noticed was that Mercado and Ramirez were near one another. Rodriguez saw Ramirez swing the jack and hit Mercado. Ramirez hit Mercado again. Rodriguez then threw an oil can spout at Ramirez. Ramirez was hit on the side of the face. He fell to the ground. Rodriguez saw that Ramirez was bleeding.

When questioned by Mercado's lawyer, Rodriguez testified that he did not see Ramirez strike Mercado. He did, however, see bruises on Mercado's body later that day at the police station. Under cross-examination Rodriguez testified that he did see Ramirez hit Mercado with the jack, once on the shoulder and again somewhere around the head or back of the head or neck area. Blood was dripping from Mercado's shoulder as a result of being hit with the jack.

The defendants first contend that it was reversible error for the trial court to refuse the requested jury instructions concerning the justifiable use of force. It is well settled that a defendant is entitled to have the jury consider his claim of justifiable use of force where that defense has some foundation in the evidence. (*People v. Harris* (1976), 39 Ill. App. 3d 805, 350 N.E.2d 850.) Very slight evidence upon a given theory will justify an instruction. *People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 52; *People v. Harris*.

■■ We believe there is evidence in the record here sufficient to require the giving of the requested self-defense instructions. According to defense testimony, Ramirez tried to run down the defendants with his car. A high speed chase followed, and defense witnesses testified that Ramirez's car hit the back of Mercado's car. When the two vehicles reached the gas station, Ramirez exited his car with a tire jack in his hand. Most significantly, there is testimony that Ramirez hit Mercado with the tire jack on the back of the neck, the shoulder, and on the lower chest and stomach area. Rodriguez testified that he threw an oil can spout at Ramirez after seeing Ramirez hit Mercado twice with a tire jack. The spout hit Ramirez on the side of the face and he fell to the ground, bleeding. The defendants testified that Mercado was bruised and bleeding as a result of being hit by

Ramirez with the tire jack. We recognize that the victim and an apparently disinterested witness testified that the victim was brutally beaten by the defendants and Nuncci without provocation and that a jury would not be likely to accept the defendants' diametrically opposed version of the events. However, the credibility of the witnesses can only be resolved by the jury, not by the trial court. (*People v. Dowdy* (1974), 21 Ill. App. 3d 821, 316 N.E.2d 33.) The defendants were entitled to their theory of defense even if the trial judge believed that the evidence offered in support of that defense was inconsistent or of doubtful credibility. *People v. Woodward* (1979), 77 Ill. App. 3d 352, 395 N.E.2d 1203.

The State argues that the defendants are not entitled to a self-defense instruction because they did not admit to hitting Ramirez. We are not persuaded by this contention. A defendant is entitled to the benefit of any defense shown by the evidence, even if the facts on which such defense is based are inconsistent with the defendant's own testimony. *People v. Bratcher; People v. Woodward.*

Defendant Mercado contends that the trial court erred in denying his motion to suppress because (1) the State did not establish that he was given *Miranda* warnings prior to making the statement, and (2) the State did not establish that he waived those rights. He sought to suppress testimony by Officer Pepol that Pepol told Mercado that the victim would possibly die and that Mercado answered, "Yeah, that jagoff should die."

Officer Pepol was the only witness to testify at the hearing on the defendant's motion to suppress. He stated that the defendants were arrested at approximately 4 a.m., on August 27, 1977, at the gas station where the incident occurred. They were then taken to the police station by officers other than Pepol. Pepol arrived at the station approximately one-half hour after the arrest.

The defendants were taken to the so-called "roll-call room" at the station. This is a common area in which are located the watch commander's office, the lieutenant's office, and the "tac" office. Several of the officers present in the room were doing work related to the defendant's case. Pepol sat down at the table with the defendants, Nuncci, the two women who were with the defendants, and a fourth man who had been brought in for questioning.

According to Pepol, the defendants were given their *Miranda* warnings by the officers who did the paper work. These officers told the defendants that they had a right to remain silent, that anything they said would be used against them in a court of law, that they had a right to an attorney, and that if they could not afford an attorney one would be appointed for them. Pepol also testified, at least four different times, that he read the defendants their *Miranda* warnings.

After questioning by Rodriguez's lawyer, Mercado's lawyer examined Pepol. Pepol told Mercado's counsel that he did not give Mercado the *Miranda* rights but that the arresting officers did.

About an hour or an hour and a half after the arrest, Pepol received a telephone call from the hospital. He was told that the victim would possibly die. After hanging up the phone, Pepol stated that there was "a great possibility that this victim may die." Pepol testified that Rodriguez responded, "Fuck him, I hope he dies." Mercado responded by saying, "Yeah, that jagoff should die."

Pepol was not asked any question which disclosed what the defendants did or said after they were given their *Miranda* warnings. He testified that he and the arresting officers questioned the defendants for one hour. He asked the defendants preliminary questions and "Why? For what purpose?"

■■ According to the standard as set forth in *Miranda v. Arizona* (1966), 384 U.S. 436, 475, 16 L. Ed. 2d 694, 724, 86 S. Ct. 1602, 1628:

> "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. [Citations.]
>
> &#42; &#42; &#42;
>
> &#42; &#42; &#42; a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained.
>
> &#42; &#42; &#42;
>
> 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.'"

However, the State is not required to prove that the defendant by some expression waived his constitutional rights after they were explained to him. (*People v. Landgham* (1970), 122 Ill. App. 2d 9, 257 N.E.2d 484, *cert. denied* (1971), 402 U.S. 911, 28 L. Ed. 2d 652, 91 S. Ct. 1389.) Rather, in the absence of evidence that the defendant stated that he understood his rights, the surrounding circumstances may be examined to determine whether he did. (*People v. Beverly* (1978), 63 Ill. App. 3d 186, 379 N.E.2d 753.) As stated by the court in *People v. Higgins* (1972), 50 Ill. 2d 221, 227, 278 N.E.2d 68, 72, quoting *State v. Kremens* (1968), 52 N.J. 303, 311, 245 A.2d 313, 317, " '[a]ny clear manifestation of a desire to waive is sufficient. The test is the showing of a knowing intent, not the utterance of a

shibboleth. The criterion is not solely the language employed but a combination of that articulation and the surrounding facts and circumstances.' "

■■ Here, the record is silent on the issue of waiver. There is no evidence that the defendant stated that he understood his rights, and an examination of the surrounding circumstances, as described by Pepol, does not support a finding that Mercado waived his rights. The mere fact that he made a statement is not sufficient evidence of waiver. (*Miranda v. Arizona.*) We conclude that the State did not meet its burden of establishing that the defendant knowingly and intelligently waived his rights.

■■ The State contends that even if Mercado did not knowingly and intelligently waive his rights under *Miranda*, his statement is nonetheless admissible because it was "voluntary" and not the result of interrogation. The issue of what constitutes interrogation under *Miranda* was recently considered by the Supreme Court in *Rhode Island v. Innis* (1980), 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682. The court in *Innis* noted that volunteered statements are not barred by the Fifth Amendment and are not affected by the *Miranda* decision. Rather, the procedural safeguards outlined in *Miranda* come into play where the subject is taken into custody *and* is subjected to interrogation. The term interrogation refers not only to express questioning but also to any words or actions that the police should know are "reasonably likely to elicit" any response, whether inculpatory or exculpatory, that the prosecution may seek to introduce at trial.

■■ Here, Pepol testified that before making the statement, the defendants had been under arrest for 1½ hours. Pepol had asked the defendants preliminary questions. The defendants were also questioned by the arresting officers. Pepol specifically asked them "Why? For what purpose?" According to Pepol the defendants were sitting at the table for a one-hour period of questioning. The State did not establish that Mercado waived his *Miranda* rights. Pepol stated that the victim might possibly die. We believe that considering all these circumstances it cannot be said that Mercado's statement was volunteered. Rather, we conclude that he made the statement while "subjected to interrogation" as defined in *Innis*.

■■ Defendant Mercado next contends that he was denied equal protection because under Illinois law there is no offense of attempt voluntary manslaughter. The "sudden and intense passion" formulation of voluntary manslaughter (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(a)) has been held to be inconsistent with the intent required for attempt offenses. (*People v. Weeks* (1967), 86 Ill. App. 2d 480, 230 N.E.2d 12.) However, it has not yet been decided whether the formulation of voluntary manslaughter provided in subsection (b) of the voluntary manslaughter statute (Ill. Rev. Stat.

1979, ch. 38, par. 9—2(b))—unreasonable belief that force is necessary—could serve as a basis for the inchoate offense of attempt. (*People v. Gore* (1979), 72 Ill. App. 3d 171, 390 N.E.2d 925; *People v. Perez* (1977), 50 Ill. App. 3d 959, 356 N.E.2d 1; *People ex rel. Bassin v. Israel* (1975), 31 Ill. App. 3d 744, 335 N.E.2d 53.) We find it unnecessary to decide the issue here. The defendants did not tender an instruction on attempt voluntary manslaughter or raise the issue in any manner at the trial level. Therefore, the issue is waived for purposes of appeal. *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331; *People v. Gore*.

Due to our disposition of this cause we find it unnecessary to reach the other issues raised by the defendants.

For the foregoing reasons the judgment of the circuit court is reversed and the cause is remanded to the trial court for proceedings consistent with the views expressed herein.

Reversed and remanded.

ROMITI, P. J., concurs.

Mr. JUSTICE LINN dissenting:

## I
## A

Today, the majority holds that the defendants are entitled to have the jury instructed on justifiable use of force despite defendant Mercado's concomitant denial of using any force and defendant Rodriguez's concomitant denial of intentionally using force against the victim. Because I feel that the evidence presented in this case fails to meet the minimal level required to warrant a self-defense or defense of other instruction, I respectfully dissent from the majority's holding.

Section 7—1 of the Criminal Code provides that:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another * * *." (Ill. Rev. Stat. 1977, ch. 38, par. 7—1.)

Self-defense and defense of other, the justifiable use of force defenses, presuppose that the accused committed the act and a defendant invokes either defense as a justification for the act. (*People v. Hawkins* (1980), 88

Ill. App. 3d 178, 410 N.E.2d 309; see also *People v. Smith* (1912), 254 Ill. 167, 98 N.E. 281; *People v. Lahori* (1973), 13 Ill. App. 3d 572, 300 N.E.2d 761.)[1] The cases cited by the majority support this basic premise. In each, the defendant involved admitted committing the act and invoked the defense as justification for the act. See, *e.g., People v. Woodward* (1979), 77 Ill. App. 3d 352, 395 N.E.2d 1203; *People v. Harris* (1976), 39 Ill. App. 3d 805, 350 N.E.2d 850.

*People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31, also relied upon by the majority, holds that a defendant is not entitled to a self-defense instruction, even where he admits committing the act, unless there is "some evidence" of self-defense presented at trial. In *Bratcher*, the defendant testified that police officers twice shoved him before he struck one of them. The defendant asserted that he was not placed in fear by the officer's actions but that he was surprised and angry "[a]nd, [in] an automatic reaction to the officer's touch * * *, [h]e struck out." (63 Ill. 2d 534, 540, 349 N.E.2d 31, 34.) The Illinois Supreme Court noted that defendant's comment to a police officer that he thought the police officers would whip him was insufficient to warrant submitting the issue of self-defense to the jury, "[e]specially in light of the defendant's own testimony which reveal[ed] a clearly opposite motivation for his action." (63 Ill. 2d 534, 540, 349 N.E.2d 31, 34.) The *Bratcher* court held that the evidence presented was insufficient to reach the minimal level of evidence required to warrant a self-defense instruction. To hold otherwise, the court stated, would allow a defendant to demand unlimited instructions based upon the "[m]erest factual reference or witness' comment." 63 Ill. 2d 534, 541, 349 N.E.2d 31, 34.

As in *Bratcher*, the evidence presented in this case is insufficient to meet the minimal level required to warrant a self-defense or defense of other instruction. Defendant Mercado testified that at no time did he use any force against the victim. He also asserted that he was angry with the victim prior to confronting him in the gas station. If, as defendant Mercado asserted at trial, he never used any force against the victim, then it follows that he could not have reasonably believed that force was necessary to prevent harm to himself. If defendant Mercado believed force was necessary to protect himself, he necessarily would have used it against the victim. It is illogical to claim self-defense when no act of self-defense was committed. Since defendant Mercado denied commit-

---

[1] The Random House Dictionary of The English Language defines self-defense as "A claim or plea that the use of force or injury or killing another was necessary in defending one's own person from physical attack." (The Random House Dictionary of the English Language 1293 (unabridged ed. 1966).) Black's Law Dictionary defines the defense as an "excuse for the use of force in resisting an attack on the person * * *." Black's Law Dictionary 1525 (4th ed. 1968).

ting the act, and the State's evidence did not show that defendant acted in self-defense, the trial court properly refused defendant Mercado's self-defense instruction. *People v. Hawkins.*

Similarly, defendant Rodriguez's testimony failed to meet the minimal level required to warrant a justifiable use of force instruction. Rodriguez first asserted that he never hit the victim with anything, but later, he testified that he hit the victim with an oil spout to prevent the victim from harming Mercado. He further stated that he did not intend to hurt the victim when he threw the oil spout. Since defendant Rodriguez did not intend to use force likely to cause death or great bodily harm, as defined in section 7—1 of the Criminal Code, he could not have reasonably believed that such force was necessary or justified to defend Mercado in view of the fact that admittedly he did not use that force. "By its very nature, self-defense [and defense of other], whether reasonable or not, relates to the *intentional* or knowing use of force and not to an accidental" use of force. (Emphasis added.) *(People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 893, 420 N.E.2d 461, 467.) To invoke the defense, the defendant must have acted intentionally. Where as here, defendant Rodriguez did not act intentionally and the State's witnesses did not present "some evidence" of acting in defense of others *(People v. Bratcher)*, the minimal level of evidence was not met and the trial court properly refused the justifiable use of force instruction. Accordingly, I would affirm the trial court's ruling.

## B

The majority also holds that the State did not meet its burden of establishing that Mercado knowingly and intelligently waived his *Miranda* rights prior to introducing in the State's case-in-chief Mercado's statement that the victim "should die." Implicit in this holding is the recognition that the State did establish that Mercado was apprised of his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. I agree that the evidence shows Mercado was informed of his *Miranda* rights, and Mercado's extensive history with the criminal justice system tends to indicate that he was familiar with these rights and understood them.

Although it appears that the record does not sufficiently show that the State met its heavy burden of demonstrating that the defendant knowingly and intelligently waived his privilege against self-incrimination *(Miranda v. Arizona; People v. Washington* (1977), 68 Ill. 2d 186, 369 N.E.2d 57), in my view, the introduction of Mercado's statement, if error, was harmless error beyond a reasonable doubt. *(Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) Both the victim and a disinterested eyewitness testified that Mercado brutally beat the victim.

The physician who treated the victim testified that the victim's injuries were inflicted in a manner consistent with the testimony of the victim and the eyewitness. Given this evidence, and the fact that Mercado's statement was not inconsistent with his explanation of what occurred, I am able to conclude beyond a reasonable doubt that the use of Mercado's statement at trial did not contribute to his conviction. (See *People v. Anthony* (1976), 38 Ill. App. 3d 427, 347 N.E.2d 770; compare *People v. Washington* (1977), 68 Ill. 2d 186, 369 N.E.2d 57 (eyewitnesses were unable to identify defendant at a lineup).) Since any error resulting from the introduction of Mercado's statement was harmless beyond a reasonable doubt, I would not reverse the jury's determination of guilt.

In view of my decision to affirm the convictions and not reverse and remand for a new trial, it is necessary for me to address certain of defendants' additional contentions which have not been disposed of by the majority.

## II

Defendants contend that the State exercised its peremptory challenges to systematically exclude Blacks from the jury. To sustain a challenge to an array, defendants' motion to discharge the jury must state facts which show the jury panel was improperly selected or drawn. (Ill. Rev. Stat. 1977, ch. 38, par. 114—3(b).) Defendants' motion, in a conclusionary manner, merely stated that the State exercised its peremptory challenges to systematically exclude Blacks from the jury. This bare assertion fails to show purposeful exclusion and, since by agreement, the voir dire was unreported, I am unable to determine how many challenges, in fact, were exercised to exclude Blacks and what evidence, if any, discloses the accuracy of defendants' charge. (*People v. Bracey* (1981), 93 Ill. App. 3d 864; *People v. Fleming* (1980), 91 Ill. App. 3d 99.) In both these cases, this court emphasized the importance of preserving a record of voir dire.

Lacking an appropriate record, I find myself without an evidentiary basis upon which to review the trial court's ruling. At most, the record contains conflicting statements by the court and counsel for defendants as to how many Blacks were excluded from the venire. Whatever the exclusion, I am unable to determine whether this exclusion was purposefully discriminatory, and consequently I would find the defendants' contention is without support. *People v. Bracey*; *People v. Fleming*.

## III

Defendants also contend that their convictions for aggravated battery must be vacated because the trial court ruled that defendants' aggravated battery convictions merged with their attempt murder convictions. I agree that the aggravated battery convictions should be vacated because

these convictions are predicated on the same conduct underlying the attempt murder convictions. See *People v. Williams* (1978), 62 Ill. App. 3d 966, 379 N.E.2d 1268; *People v. Washington* (1978), 60 Ill. App. 3d 662, 377 N.E.2d 397.

Accordingly, I would affirm the defendants' attempt murder convictions and sentences and remand the cause to the trial court to vacate the aggravated battery convictions.