THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAWRENCE BROOKS, Defendant-Appellant.

First District (1st Division)   No. 83—2318

Opinion filed January 28, 1985.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Cuomo, and Linas J. Kelecius, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a jury trial, defendant Lawrence Brooks was convicted of attempted murder, armed violence and aggravated battery (Ill. Rev. Stat. 1983, ch. 38, pars. 8—4, 33A—2, 12—4). Defendant received concurrent terms of imprisonment of 15 years on the attempted murder and armed violence convictions. On appeal, defendant argues: (1) the trial court erred in refusing to instruct the jury on the justified use of force; and (2) the trial court erred in preventing him from arguing that evidence that one of the victims once had a gun in his truck tended to show that the victim had a gun in his truck on the day of the shooting.

Testifying at trial for the State were defendant's two victims— Claudette Brooks, the defendant's estranged wife, and her 30-year-old son, Charles Brooks, the defendant's stepson. Claudette testified that on April 9, 1982, she left defendant because he "jumped on" her, and she signed a battery complaint against him in regard to this incident. Claudette next saw defendant on May 19, 1982, in a courtroom at 51st Street and Wentworth Avenue in Chicago at a hearing concerning her battery complaint. The trial court at that time ordered defendant to stay away from her.

Claudette further testified she did not see defendant again until May 27, 1982, the day of the crime. On that date, she returned to the same courtroom for a hearing in regard to an assault claim defendant had filed against her son Charles. While they were inside the courtroom, defendant walked over to her several times and tried to talk to her. The sheriff's police came over on at least two occasions to tell defendant to be quiet. The case was continued until the next day. As Claudette and Charles left the courtroom, defendant again insisted on talking to Claudette. The police told defendant to leave, and accompanied him out of the building. The police talked with defendant outside the building, and defendant left. Pursuant to police instructions, Claudette stayed by the building while Charles went to get his truck which was parked nearby.

Claudette also stated that when Charles pulled up in front of the court building, she got in his truck and the two drove east on 51st Street. While they were stalled in traffic under a viaduct on 51st Street just west of the court building, Claudette saw defendant standing on the sidewalk about 20 feet away with a revolver in his right hand. Claudette started screaming, and defendant left the sidewalk and ran toward the truck. Defendant, while standing about two feet from the truck, pointed his gun through the window and began shooting. A bullet went through Claudette's left hand and hit Charles in

the head. Charles fell out of the truck after the first shot. Defendant continued shooting, wounding Claudette in the head. She heard a total of four shots. Claudette testified that defendant and Charles never fought for the gun.

Claudette's testimony was corroborated by Charles Brooks, who gave a similar account of the incident. Charles testified that at the May 27 hearing, defendant was irritating and harassing Claudette inside the courtroom and later as they left the courtroom. Following the hearing, Charles stated that as he drove with Claudette under a viaduct west of the court building he saw defendant pull out a revolver and start running toward his truck. Charles testified he could not speed up at that point because traffic was backed up in front of the truck and there was traffic in the oncoming lane. Charles tried to open the door to get out of the truck, but defendant shot him before he had a chance to do so. After Charles had been struck, he fell out of the truck, and heard a second shot as he was getting up. He heard two more shots as he ran to the police station for help. When he returned with a sheriff, he found Claudette slumped over in the truck with gun wounds in her hand, neck and head.

Also testifying for the State was Dr. Edward Snyder, who examined Claudette Brooks following the shooting. Dr. Snyder testified that Claudette had three gunshot wounds in her body and that the entrance wound of each bullet was on her left side.

Testifying on his own behalf, defendant stated that on April 19, 1982, Charles Brooks came to his house with defendant's wife's cousin. Defendant stated that Charles told him that he did not like what defendant had done to Charles' mother and that he was going to shoot defendant. Defendant stated that Charles pulled out a gun and fired a shot over defendant's head. Defendant then contacted the police and signed a complaint against Charles.

Defendant also testified that at the May 27 hearing on his complaint he attempted to talk to Claudette in the courtroom about what he should "do in this matter." After the case was continued, defendant stated he again tried to talk to Claudette as she and Charles left the courtroom, but bailiffs escorted the three of them outside. As defendant walked under the viaduct on 51st Street en route to his parked car, a truck pulled up behind him. Defendant testified he heard a gunshot, and turned around and saw Claudette leaning forward in the truck in a crouched position. As he walked toward the truck, he heard another shot and then saw Charles holding a gun. Charles, who was in the driver's seat, extended his right hand toward the passenger side window behind Claudette and pointed his gun at

him. Charles attempted to fire the gun, but it misfired.

Defendant further testified that he reached in the window and, with one hand, grabbed Charles' hand with the gun. The butt of the gun was in Charles' hand, and defendant had a "good portion" of the barrel in his hand. Defendant stated that Charles, and not he, had his hand on the trigger when he heard a third shot during their struggle for the gun. Finally, as they continued wrestling for the gun, defendant heard a fourth shot while he had his own finger on the trigger. Defendant stated he ultimately used both hands to take the gun from Charles and then left with the weapon.

Defendant testified he had no intention of hurting or attempting to kill Charles. He did not intend to shoot anybody. Rather, he stated that his only intention was to take the gun away from Charles.

## I

■■ Defendant's first argument on appeal is that the trial court erred in refusing to instruct the jury on self-defense. We agree. Self-defense relates to the use of force which a person reasonably believes is necessary to defend or protect himself. (Ill. Rev. Stat. 1983, ch. 38, par. 7—1.) A defendant is entitled to have the jury instructed on self-defense where that defense has some foundation in the evidence. (*People v. Rodriguez* (1981), 96 Ill. App. 3d 431, 421 N.E.2d 323.) This court has held that "slight evidence of self-defense" will support the giving of the instruction. *People v. Scott* (1981), 97 Ill. App. 3d 899, 903, 424 N.E.2d 70.

In the present case, we believe the record contains sufficient evidence to warrant the giving of a self-defense instruction. Defendant testified that as he walked under a viaduct following the May 27 court hearing, Charles Brooks pulled his truck up behind him and attempted to shoot at him. After Charles fired two shots, defendant approached the passenger side of the truck and struggled with Charles for the gun. Defendant testified that two more shots were accidently fired during their struggle. Defendant further related to the jurors that one month prior to the shooting Charles had shot at him out of anger about defendant's breakup with Charles' mother. Defendant stated that during the incident under the viaduct he feared that Charles was again attempting to kill him and thus tried to wrestle the gun from him. From the foregoing testimony, a jury could infer that Charles intended to kill defendant, and that defendant was acting in self-defense when the gun was fired.

We recognize that both victims testified that defendant was the aggressor and began shooting at them without any provocation, and

that no force was threatened against defendant. However, the credibility of the witnesses can only be resolved by the jury, not by the trial court. (*People v. Rodriguez* (1981), 96 Ill. App. 3d 431, 421 N.E.2d 323.) Defendant was entitled to his theory of defense even if the trial judge believed that the evidence offered in support of that defense was of doubtful credibility. (96 Ill. App. 3d 431, 436.) We note that the medical testimony was consistent with defendant's version of the story. Dr. Snyder testified that the bullets entered Claudette's body from her left side, which was the side on which Charles, the driver, was sitting at the time the shots were fired. It was undisputed that defendant was standing to the right of Claudette during the shooting.

■ The State argues that defendant cannot claim self-defense because he testified that the shooting was accidental and that he did not intend to shoot or harm anyone. This court has held, however, that a defendant is entitled to a self-defense instruction even where the shooting results accidentally from a struggle. (*People v. Buchanan* (1980), 91 Ill. App. 3d 13, 414 N.E.2d 262.) In *Buchanan*, we noted that the defendant and the victim "struggled over the gun, which discharged several times," and we concluded:

"Although a defendant's testimony that death resulted from a struggle for a weapon may help negate his claim on appeal that self-defense was shown conclusively at trial [citations], that testimony does not justify a trial court in refusing to *** instruct on *** self-defense [citations]. *** Even though the shooting occurred during and as a result of the struggle and was in that sense accidental, *the preceding events could place the shooting in the context of self-defense.*" (Emphasis added.) (91 Ill. App. 3d 13, 15.)

Here, similar to *Buchanan*, we believe that the preceding events, as testified to by defendant, could place the shooting in the context of self-defense.

The propriety of relying on self-defense where engaged in a struggle was also recognized by this court in *People v. Cruz* (1978), 66 Ill. App. 3d 760, 384 N.E.2d 137. In *Cruz*, as in the present case, a struggle ensued between the defendant and the victim and, during the struggle, the gun accidentally went off, killing the victim. We held that it was reversible error to refuse to instruct the jury on self-defense, and we stated:

"The fact that the defendant may have denied any intention to commit the act is *** irrelevant. [Citation.] And the courts have indicated that it is perfectly proper to charge the jury

with inconsistent defenses so long as the facts and nature of the case support the feasibility of either." (66 Ill. App. 3d 760, 764.)

Consequently, contrary to the State's assertion, no bar to the self-defense instruction arises in this case from a claimed lack of intent or from a possible inconsistent accident defense.

We are aware of cases which have taken a view different from that espoused herein. (*Cf. People v. Chatman* (1982), 110 Ill. App. 3d 19, 441 N.E.2d 1292; *People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 420 N.E.2d 461, *cert. denied* (1982), 455 U.S. 948, 71 L. Ed. 2d 661, 102 S. Ct. 1448; *People v. Dzambazovic* (1978), 61 Ill. App. 3d 703, 377 N.E.2d 1077.) However, we believe that, based on the record before us and the authorities relied upon above, defendant should have been given a self-defense instruction, and it was reversible error for the trial court not to do so.

## II

■ Defendant next contends that the trial court erred in prohibiting defense counsel from arguing during closing argument that evidence that the victim once possessed a gun in his truck had a natural tendency to show that the victim possessed a gun in his truck on the day of the shooting. The record reveals that Charles Brooks testified that he owned a gun in 1980 and was convicted of unlawful possession of a firearm for carrying that gun under the seat of his truck in 1980. Charles testified, however, that he did not own a gun in 1982 and that he did not have a gun in his truck on the day of the shooting. Prior to closing argument, the State moved to prevent defendant from arguing that evidence of the prior possession tended to show that Charles had a gun in the truck on the day of the shooting. The trial court granted the motion.

We find no error as to this matter. Generally, a court will not consider evidence that a person has, or has not, done a certain act at a particular time as probative of a contention that he has, or has not, done a similar act at another time. (*Vuletich v. Bolgla* (1980), 85 Ill. App. 3d 810, 814, 407 N.E.2d 566.) We are unaware of any exception to this general rule that is applicable to the instant case. Moreover, any presumption that Charles had a gun in his truck at the time of the shooting was rebutted by Charles' testimony at trial. Charles specifically testified that he did not own a gun in 1982 and did not have a gun in the truck on the day of the shooting. Under Illinois law, a presumption, once rebutted, vanishes entirely from a case. (*Diederich v. Walters* (1976), 65 Ill. 2d 95, 100-02, 357 N.E.2d 1128.) Accordingly,

the granting of the State's motion regarding the gun was proper.

For the reasons set forth above, the judgment of conviction is reversed and the cause is remanded for a new trial. We note that the evidence at trial was sufficient to support a conclusion by the jury that defendant was guilty beyond a reasonable doubt. This does not mean that we are making a finding as to defendant's guilt or innocence which would be binding on retrial, but rather, our consideration of the sufficiency of the evidence admitted at trial will remove the risk of subjecting defendant to double jeopardy. See *People v. Frazier* (1984), 127 Ill. App. 3d 151, 153-54, 469 N.E.2d 594.

Reversed and remanded.

McGLOON and O'CONNOR, JJ., concur.